# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| VLSI TECHNOLOGY LLC, | |
| Plaintiff, | **Case No.**: 6:21-cv-299 |
| | **JURY TRIAL DEMANDED** |
| v. | ███████████████ |
| INTEL CORPORATION, | |
| Defendant. | |

## VLSI'S OPPOSITIONS TO INTEL'S MOTIONS IN LIMINE

10924706

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      MIL NO. 1: Exclude References To Other Litigations And Proceedings ..........................1

II.     MIL NO. 2: Exclude References To ███████████████████████████
        ████████████████████████████ ...................................................3

III.    MIL NO. 3: Exclude Reasons For Witnesses Being Unavailable Live At Trial ...............3

IV.     MIL NO. 4: Exclude Opinion Commentary On Case Publicity Or Importance ................4

V.      MIL NO. 5: Exclude References To Irrelevant Texas Connections During Voir
        Dire.........................................................................................................................6

VI.     MIL NO. 6: Exclude Use Of Demonstratives That Contain Undesignated Or
        Otherwise Inadmissible Deposition Testimony ..................................................7

VII.    MIL NO. 7: Exclude Incomplete, Selective References To Entities That May
        Benefit From Potential Recovery By VLSI ........................................................8

VIII.   MIL NO. 8: Exclude Expert Opinion On Infringement Under Doctrine Of
        Equivalents ...........................................................................................................10

IX.     MIL NO. 9: Exclude Argument Or Evidence Of Willful Infringement ...........................11

X.      MIL NO. 10: Exclude Argument, Testimony, Or Suggestion That Intel Is A
        "Patent Holdout" Or Refuses To Take A License Outside Of Litigation .......................15

XI.     MIL NO. 11: Exclude Irrelevant And Prejudicial References To Intel's Size,
        Wealth, And Financial Performance ...................................................................15

XII.    MIL NO. 12: Exclude Reliance On Irrelevant And Prejudicial References To
        Total Revenues For The Accused Products ........................................................16

XIII.   MIL NO. 13: Exclude Reliance On Prior Intel Litigation Settlements And, If
        They Are Admitted Over Intel's Objection, Require VLSI To Raise Litigation
        Settlements In Its Case-In-Chief .......................................................................18

XIV.    MIL NO. 14: Exclude Reliance On Dr. Sullivan's Undisclosed And Unduly
        Prejudicial Per-Unit Damages Numbers ...........................................................22

XV.     MIL NO. 15: Exclude References To Innography Patent Strength Scores......................25

XVI.    MIL NO. 16: Exclude References To Discovery Disputes (Resubmitted)....................37

XVII.   MIL NO. 17: Exclude References To Intel's Purported Bad Acts And Conduct
        Outside This Litigation (Resubmitted) ..............................................................39

**Page**

XVIII.   MIL NO. 18: Exclude References To Expert Testimony In Other Cases
(Resubmitted)..............................................................................................................41

XIX.   MIL NO. 19: Exclude Comparisons Of Burden Of Proof Standards
(Resubmitted)..............................................................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.Hak Indus. Servs. BV v. Techcorr USA, LLC,*
2014 WL 12591696 (2014)...........................................................................................42

*ABSTRAX, INC. v. DELL, INC,*
2009 WL 10677355 (E.D. Tex. Oct. 9, 2009) .......................................................43

*Apotex, Inc. v. Cephalon, Inc.,*
2017 WL 2362400 (E.D. Pa. May 31, 2017) ........................................................13

*Briese Lichttechnik Vertriebs GmbH v. Langton,*
2012 WL 5457681 (S.D.N.Y. Nov. 8, 2012) .........................................................14

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.,*
2014 WL 183212 (W.D. Pa. Jan. 14, 2014).........................................................41

*Chamberlain Grp., Inc. v. Lear Corp.,*
2011 WL 13254690 (N.D. Ill. Mar. 22, 2011).....................................................15

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.,*
935 F.3d 1341 (Fed. Cir. 2019).............................................................................2

*Citrix Sys., Inc. v. Workspot, Inc.,*
2020 WL 5884970 (D. Del. Sept. 25, 2020).......................................................41

*Cleveland v. Bradshaw,*
65 F. Supp. 3d 499 (N.D. Ohio 2014)..................................................................45

*Collins v. Wayne Corp.,*
621 F.2d 777 (5th Cir. 1980) ..........................................................................43, 44

*Content Guard Holdings, Inc. v. Amazon.com, Inc.,*
2015 WL 11089749 (E.D. Tex. Aug. 6, 2015) ...............................................17, 18

*Cybergym Research, LLC v. ICON Health & Fitness, Inc.,*
2007 WL 9724237 (E.D. Tex. Oct. 7, 2007) ........................................................13

*Eaton Corp. v. Parker-Hannifin Corp.,*
292 F. Supp. 2d 555 (D. Del. 2003).....................................................................41

*Eko Brands LLC v. Adrian Rivera Maynez Enters., Inc.,*
946 F.3d 1367 (Fed. Cir. 2020).............................................................................15

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC,*
2017 WL 2651618 (E.D. Tex. June 20, 2017).......................................................43

**Page**

*Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*,
   927 F.3d 1292 (Fed. Cir. 2019).................................................................................22

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014)...........................................................................17, 18

*Fractus, S.A. v. AT&T Mobility LLC*,
   2019 WL 4805910 (E.D. Tex. Sept. 30, 2019) ..................................................43, 44

*Freeny v. Murphy Oil Corp.*,
   2015 WL 11089600 (E.D. Tex. June 4, 2015).........................................................11

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970)................................................................ *passim*

*Graham v. Union Pac. R. Co.*,
   2008 WL 4643292 (E.D. Ark. Oct. 17, 2008) ..........................................................3

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016).............................................................................................41

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   2009 WL 112834 (N.D. Cal. Jan. 16, 2009), *aff'd*, 645 F.3d 1336 (Fed.
   Cir. 2011) ...............................................................................................................29

*Hypertherm, Inc. v. Am. Torch Tip Co.*,
   2009 WL 435324 (D.N.H. Feb.19, 2009) ...............................................................14

*Innovention Toys, LLC v. MGA Entm't, Inc.*,
   2012 WL 5384880 (E.D. La. Nov. 1, 2012) ...........................................................18

*Intel Corp. v. Future Link Sys., LLC*,
   268 F. Supp. 3d 605 (D. Del. 2017)...............................................................7, 8, 41

*Jimenez v. United States*,
   2014 WL 3907773 (W.D. Tex. July 25, 2014) .......................................................21

*Johnson v. Gen. Mills Inc.*,
   2012 WL 13015023 (C.D. Cal. May 7, 2012) ..........................................................1

*Keystone Driller Co. v. Gen. Excavator Co.*,
   290 U.S. 240 (1933).................................................................................................41

*Knight v. Kirby Inland Marine Inc.*,
   482 F.3d 347 (5th Cir. 2007) ...................................................................................43

**Page**

*Linstrom v. QuikTrip Corp.*,
  2020 WL 6140553 (W.D. Mo. Oct. 19, 2020) ........................................................................ 39

*Luce v. United States*,
  469 U.S. 38 (1984) ........................................................................................................... 1, 20

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ............................................................................................ 24

*McPherson v. Rowe*,
  366 F. App'x 43 (11th Cir. 2010) .......................................................................................... 25

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
  288 F. Supp. 3d 872 (E.D. Wis. 2017) .................................................................................. 15

*Morgan v. Com. Union Assur. Cos.*,
  606 F.2d 554 (5th Cir. 1979) ............................................................................................... 20

*In re MSTG, Inc.*,
  675 F.3d 1337 (Fed. Cir. 2012) ............................................................................................ 22

*Optis Wireless Technology, LLC v. Apple Inc*.,
  No. 2:19-cv-00066 (E.D. Tex.) ............................................................................................. 30

*PACT XPP Techs., AG v. Xilinx, Inc*.,
  2012 WL 1205855 (E.D. Tex. Apr. 11, 2012) ....................................................................... 12

*Personalized Media Commc'ns, L.L.C. v. Zynga, Inc.*,
  No. 2:12-cv-00068, D.I. 232 (E.D. Tex. 2013) ..................................................................... 33

*Pickens v. Jackson*,
  2012 WL 3901623 (E.D. Ark. Sept. 4, 2012) ....................................................................... 44

*QPSX Developments 5 Pty Ltd. v. Nortel Networks, Inc.*,
  2008 WL 728201 (E.D. Tex. Mar. 18, 2008) ........................................................................ 14

*Quinn v. Franzen Family Tractors & Parts, LLC*,
  2018 WL 9869629 (N.D. Iowa Mar. 6, 2018) ......................................................................... 3

*Rite-Hite Corp. v. Kelly Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) .............................................................................................. 37

*RMail Ltd. v. Amazon.com, Inc.*,
  2019 WL 10375642 (E.D. Tex. June 12, 2019) ..................................................................... 21

*Rowland v. Davy*,
  2020 WL 1216780 (C.D. Cal. Jan. 30, 2020) ....................................................................... 45

**Page**

*Sanchez v. Swift Transportation Co. of Arizona*,
  LLC, 2017 WL 5643554 (W.D. Tex. July 19, 2017)..............................................................44

*Sentius Int'l, LLC v. Microsoft Corp.*
  2015 WL 451950 (N.D. Cal. Jan. 27, 2015) ........................................................................18

*Shotts v. GEICO Gen. Ins. Co.*,
  2018 WL 4832625 (W.D. Okla. July 12, 2018)......................................................................3

*SSL Servs., LLC v. Citrix Sys., Inc.*,
  769 F.3d 1073 (Fed. Cir. 2014).........................................................................................13

*State Contr. & Eng'g Corp. v. Condotte Am., Inc.*,
  346 F.3d 1057 (Fed. Cir. 2003).................................................................................16, 18

*Stragent, LLC v. Intel Corp.*,
  No. 6:11-cv-421, D.I. 274 (E.D. Tex. 2014)........................................................................45

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
  617 F.3d 1296 (Fed. Cir. 2010)...............................................................................19, 32

*TWM Mfg. v. Dura Corp.*,
  789 F.2d 895 (Fed. Cir. 1986)...........................................................................................36

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)..........................................................................................17

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F. Supp. 2d 147 (D.R.I. 2009)......................................................................................14

*United States v. Ausby*,
  436 F. Supp. 3d 134 (D.D.C. 2019) .....................................................................................43

*United States v. Faye*,
  728 F. App'x 120 (3d Cir. 2018)........................................................................................45

*United States v. Sadler*,
  488 F.2d 434 (5th Cir. 1974) ............................................................................................19

*United States v. Sepulveda-Hernandez*,
  752 F.3d 22 (1st Cir. 2014)................................................................................................25

*United States v. Swanson*,
  703 F. App'x 487 (9th Cir. 2017).......................................................................................45

*Z.H. v. Abbott Labs., Inc.*,
  2017 WL 134750 (N.D. Ohio Jan. 13, 2017)........................................................................33

**Page**

**Statutes**

U.S. Code Title 35 .........................................................................................................44

**Rules**

Fed. R. Civ. P. 26.........................................................................................................25

Fed. R. Civ. P. 30(b)(6).................................................................................................39

Fed. R. Civ. Proc. 37....................................................................................................39

Fed. R. Evid. 401 .........................................................................................................44

Fed. R. Evid. 402 .........................................................................................................44

Fed. R. Evid. 403 .........................................................................................15, 41, 42, 44

Fed. R. Evid. 703 .....................................................................................................29, 33

Fed. R. Evid. 801(d)(2)..................................................................................................43

Fed. R. Evid. 804(b)(1)..................................................................................................43

**Asserted Patents**

U.S. Patent No. 6,633,187..................................................................................("'187 Patent")

U.S. Patent No. 6,366,522..................................................................................("'522 Patent")

\*        Numbered exhibits between 1 and 62 were previously filed as attachments to the Declaration of Charlotte J. Wen, which is available at D.I. 363.
        Numbered exhibits between 63 and 94 were previously filed as attachments to the Declaration of Charlotte J. Wen, which is available at D.I. 442.
        Numbered exhibits between 95 and 104 are attached to the declaration of Charlotte J. Wen, filed concurrently herewith.

\*\*        Unless otherwise indicated, docket citations are to Case No. 1:19-cv-977-ADA.  *VLSI Case 1* refers to *VLSI Technology LLC v. Intel Corp.*, Case No. 6:21-cv-057-ADA (W.D. Tex.).

\*\*\*        Citations to Intel's motions *in limine* are denoted with "Mot.," filed as D.I. 440-01.

It is well-settled that motions in *limine* are **evidentiary** in nature.  *Luce v. United States*, 469 U.S. 38, 40 (1984) (holding that a motion in limine is "any motion … to exclude anticipated prejudicial **evidence** before the **evidence** is actually offered.").  Motions in limine are not vehicles by which a party can attempt to control, direct, or impose arbitrary restrictions on its adversary's trial presentation; or argue whether some error was committed in a prior proceeding.  Yet that is precisely what many of Intel's overbroad and overreaching motions seek to do here.  Intel seeks not only to try to dictate how and when VLSI can present its case in the second trial, but also to relitigate numerous of the Court's rulings from the first trial, in such a manner as to create as uneven of a playing field as possible in Intel's favor.  Intel's motions should, except where otherwise noted below, be denied.  *See Johnson v. Gen. Mills Inc.*, 2012 WL 13015023, at *1 (C.D. Cal. May 7, 2012) ("A party cannot use a motion in limine to sterilize the other party's presentation of the case.").

## I.   MIL NO. 1: Exclude References To Other Litigations And Proceedings

VLSI generally agrees that other litigations pending between the parties should not generally be referenced for most purposes.  The scope of Intel's MIL No. 1, however, far exceeds both the scope of VLSI's motion and the Court's prior ruling regarding other litigations, D.I. 507, Case No. 6:21-cv-57, at 3, in multiple respects, and should accordingly be denied.

*First*, it is conceivable that Intel's trial presentation would make relevant certain of the categories of information that Intel's motion seeks to exclude.  For example, Intel may open the door to the jury verdict from the first trial by disparaging VLSI's business or its patent portfolio.  As another example, Intel could also open the door to argument or evidence regarding the PTAB's decisions denying institution of the IPRs that Intel filed with respect to the asserted patents.  For instance, Intel has proposed including in the jury charge that Intel "was not allowed to participate in the prosecution process or present any prior art to the patent examiner," D.I. 450-8, Case No. 6:21-cv-299, at Instruction No. 4, while attempting with this motion to insulate itself against any reference

to the PTAB proceedings and Intel's suit against the PTAB.  Moreover, *inter partes* reviews are part of the patent history, which courts have held can be relevant context for understanding the patents. *See, e.g.*, *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1351 (Fed. Cir. 2019) (PTAB's non-institution decision was admissible in patent infringement action).  As another example, Intel could open the door to facts about the first trial between the parties by making assertions inconsistent with the events of that trial, such as by arguing (as it has in the past) that it could not possibly infringe third party patents because it has a corporate policy that prevents it from infringing any such patents.

**Second**, Intel's request to exclude "any other previous or current lawsuits, proceedings, or investigations involving Intel" is improper and overbroad.  Mot. at 1.  Aspects of other litigations involving Intel are in fact relevant to multiple issues in this case, including at least damages and willfulness.  For example, as explained in further detail in VLSI's oppositions to Intel's MIL Nos. 10 and 13 below, ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███ ████ ███████████████████████████████████████████████████  ████████████████  The Court previously held that this was sufficient and denied Intel's substantially similar motion in *limine* on this basis.  Ex. 95 (*VLSI Case 1*, 1/20/2021 Sealed Tr.) 60:13-22 ("█████████████████████████████████████████████████ ██████████████████████████████████████████████████

Similarly, Intel itself claims to have received notice of the two patents in suit here through their assertion in another suit in Delaware.

---

[1] Intel also filed a *Daubert* motion to preclude Dr. Sullivan from opining regarding these settlement agreements, D.I. 264 at 17-18, which was denied.  D.I. 507, Case No. 6:21-cv-57, at 2.

Finally, the Court can and should deny Intel's motion because Intel has failed to specifically identify the evidence or argument that it is seeking to preclude.  "A motion in limine should address specific evidence that is irrelevant, inadmissible or prejudicial.  Thus, motions in limine that generally lack specificity as to particular evidence are properly denied." *Shotts v. GEICO Gen. Ins. Co.*, 2018 WL 4832625, at *1 (W.D. Okla. July 12, 2018); *see also Quinn v. Franzen Family Tractors & Parts, LLC*, 2018 WL 9869629, at *4 (N.D. Iowa Mar. 6, 2018) ("The Court cannot effectively rule in limine on a general topic without the precise statement or evidence before the Court . . . ."); *Graham v. Union Pac. R. Co.*, 2008 WL 4643292, at *1 (E.D. Ark. Oct. 17, 2008) (same).  Similarly, here, the Court should not broadly exclude unidentified references to other litigations or proceedings.  Instead, to the extent Intel objects to specific evidence at trial, the Court can rule on its objection with a full understanding of what the evidence is and how it is being used.

## II.     MIL NO. 2: Exclude References To ███████████████████████ ███████████████████████████

VLSI does not oppose this motion.

## III.    MIL NO. 3: Exclude Reasons For Witnesses Being Unavailable Live At Trial

Intel's motion to "exclude reasons for witnesses being unavailable live at trial" is impracticably speculative and overbroad.  It relies on incorrect assertions about what transpired at the first trial, such as multiple incorrect accusations that VLSI "misled" the jury.  And it stands to limit VLSI's ability to rebut potentially unfair arguments that Intel might make at trial.

As a baseline principle, VLSI agrees that argument and evidence about why witnesses on both sides are unavailable live should generally not be presented to the jury.  Nevertheless, such argument and evidence from VLSI might become necessary in response to an array of potential arguments that Intel made at the first trial, and might make again at the upcoming trial.  There should not be a blanket prohibition on such a response.

For example, VLSI has filed MIL Nos. 6.2 and 8 (*see* D.I. 442 at 24, 27), to preclude Intel from referencing any unavailability of ██████████████████████████████ ███████████ to attend or provide live testimony at trial. If Intel ultimately does make reference either to these individuals, or still others, it may become necessary for VLSI to provide at least some argument or evidence about the reasons for any unavailability. VLSI should also be permitted to explain whether these individuals sat for depositions in this case, and whether Intel designated—but chose not to play—their testimony at trial.

These circumstances are aggravated by the likelihood that Intel will seat a corporate representative, such as Mr. Adam King, at its counsel table for the duration of the trial, and attempt to contrast the live attendance of its witnesses with VLSI, NXP, SigmaTel, or others. That's precisely what Intel did in the first trial. For example, Intel's counsel announced to the jury in its opening arguments that "Mr. King will be here with us throughout the trial." *VLSI Case 1*, Trial Tr. 231:6. In its closing arguments, Intel implied that the live attendance of multiple of Intel's witnesses supported Intel's view of the merits of the case:

> Well, we would suggest to you that we know why Intel is here. As Mr. King told you, Intel is here to defend the work of its engineers. We know that the engineers took the stand. They walked right by you. They took the oath. They underwent cross-examination, and they did the best to describe to you all of the blood, sweat and tears that went into designing Intel's products, including the accused features.

*VLSI Case 1*, Trial Tr. 1599:13-19. In context, these kinds of arguments (and potentially countless others) might necessitate providing the jury with the reasons why certain witnesses might not have been available to testify at or attend the trial live.

If granted, the overbroad exclusion sought by Intel's motion would enable Intel to make a constellation of prejudicial arguments to which it would be unfairly difficult for VLSI to respond.

## IV.   MIL NO. 4: Exclude Opinion Commentary On Case Publicity Or Importance

VLSI agrees that neither party should comment on publicity and media coverage regarding

the case, but VLSI does not agree with the full scope of Intel's overbroad and unspecific motion, which apparently seeks to preclude all commentary regarding abstract notions of "importance," including any commentary to the jurors regarding the importance of their role.  The jury should be informed of the importance of their civic duty, and the importance of the constitutional rights to the public's access to trial and a trial by jury.  In addition, the technical importance, business importance and economic importance of the patents and the advances they claim will certainly at issue.

Intel's suggestion that jurors would be misled by, or "more likely" to "consult inadmissible out-of-court sources" by references to the trial being broadcast, or by commentary that "many, many people who aren't in the courtroom because of safety protections are watching every day," is both unfounded and improper.  Mot. at 5.  The jury will be sworn to abide by the rules set forth by the Court, ***including*** the admonition against consulting outside information regarding the case.  *See, e.g.,* D.I. 450-8, Case No. 6:21-cv-299, at Instruction No. 1.  And, contrary to Intel's insinuations, it would stand to reason that jurors are ***less likely*** to follow applicable rules, pay careful attention, and devote careful thought to the case if the importance of the case is hidden from them as Intel proposes.

Beyond that, however, Intel's MIL No. 4 is another instance in which Intel is trying to have it both ways.  Intel wants to preclude commentary that "people who aren't in the courtroom because of safety protections are watching" the proceedings, but has ***jointly*** agreed to submit a COVID-19 Safety Protocol, D.I. 450-15, Case No. 6:21-cv-299, which limits the number of people who can be physically present in the courtroom at any given time.  Intel also appears primed to draw the jury's attention to the physical presence of Intel employees at trial, as explained in VLSI's opposition to Intel's MIL No. 3.  As Intel well knows, under different circumstances, the jury would be able to witness the number of people watching the trial, and more witnesses might be more willing to travel to trial.  Intel identifies no real prejudice that would result from the jury being apprised of the way

the trial is being conducted, or reminded that there may be others viewing the trial remotely.

Further, Intel's suggestion that the jury being told the significance of their duty and that others are watching and appreciating their fulfillment of their civic duty is somehow prejudicial to it is also unfounded.  D.I. 440-1 at 6.  None of the statements suggest anything about the patents in suit or their merits.  In fact, it is clear that the case was being broadcasted *at Intel's request* because of safety concerns in light of COVID-19.  A categorical prohibition against any references to the manner in which the proceeding is being held—including how the public is retaining access to the Courtroom, but remotely instead of being physically present at trial—or being told of the news coverage to ensure that jurors do not accidentally review such materials would be improper and, rather than prevent prejudice, would invite prejudice and error.

## V.      MIL NO. 5: Exclude References To Irrelevant Texas Connections During Voir Dire

Intel's MIL No. 5 seeks to arbitrarily draw lines between what Texas connections can and cannot be mentioned by counsel during the course of trial, in a way that would unfairly benefit Intel at VLSI's expense.  Intel's motion omits that its own counsel repeatedly volunteered and elicited irrelevant, extraneous, non-responsive "Texas connections" during *voir dire*, opening statements, and indeed, throughout trial.  As just a few examples:

- During opening statements, counsel for Intel volunteered the following information:
  - "***Mindy is originally from Texas*** with many generations of family from San Saba.  ***She graduated from Texas A&M University*** with an electrical engineering degree."  *Id.* 230:7-11.
  - "Jim you met this morning. … ***He grew up in Athens, Texas*** in between Corsicana and Tyler and ***moved to Waco 45 years ago***.  He came because ***he was a freshman at Baylor.  He's a professor, as you now know, at the Baylor Law School.  And his wife and three children are all Baylor grads***."  *Id.* 230:12-17.
  - "***Texas has been a growth area for Intel.  Today Intel has four facilities here in Austin employing around 1,700 people***."  *Id.* 235:6-8.
- During cross-examination of Dr. Sullivan, Intel's counsel asked:
  - "Q. And you know that ***Intel also has facilities right here in Texas***, correct?"  *Id.* 690:4-5.
  - "Q. And you know ***[Intel] has as many as 1,700 people working in Austin*** doing

research and development on the next generations of technologies so that Intel
can continue to sell a ton of microprocessors, correct?" *Id.* 690:12-15.

- Intel witness Adam King volunteered during his direct examination:
  - o "Q. And just to give the jury a little bit of background, can we just start with your
    family?  Are you married?  Do you have kids? A. Yes, I've been married for
    almost 26 years.  *My wife grew up in New Mexico, went to school at Texas
    A&M.*  We have three children.  Our oldest is a college student in St. Louis, and
    the other two are teenagers that are still at home." *Id.* 794:6-12.
  - o "Q. *Can you tell us about Intel's presence here in Texas*? A. Sure.  *We've been
    in Austin, Texas for over 20 years now*.  We have 1,700 employees.  Most of
    them are engineers working on product design.  *We hire lots of engineering
    students from the University of Texas and Texas A&M.  And, you know, we
    have a long relationship with Texas.*" *Id.* 803:19-25.
- Intel witness Dr. Rotem volunteered during his direct examination:
  - o "Q. Now, sir, can you give the jury some examples of some of the customers that
    Intel shipped these chips to in October of 2004, in that time period?
    A. Yes.  The customers are the one that build systems, *like Dell which is located
    here in Texas*, like HP, Lenovo and so on." *Id.* 1056:22-1057:2.

The above sampling does not include other statements, such as how many children certain
lawyers for Intel have, how old they are, or how long counsel has been married.  *See VLSI Case 1*,
Trial Tr. 230:18-231:2.  Those statements also appeared to have the very purpose Intel is now
complaining about here: they were "targeted at currying favor with the venire." Mot. at 6.

Intel cites no legal support for its motion because it has none.  The statements which Intel
complains about were proper, and Intel cannot reasonably claim outrage at discussing "personal
connections to Texas" while at the same time asking its witnesses questions such as "Can you tell us
about Intel's presence here in Texas?"  Intel's motion should be denied.

## VI.   MIL NO. 6: Exclude Use Of Demonstratives That Contain Undesignated Or
Otherwise Inadmissible Deposition Testimony

Intel's motion *in limine* represents a complete 180-degree turn in Intel's position at the first
trial on this same issue.  At that trial, Intel's counsel admitted that playing the deposition testimony
already displayed to the jury on demonstratives would be an unnecessary waste of the jury's time:

MR. LEE: On this one Mr. Chu and I agree.  For the excerpts that Dr. Conte put on his
slides, which we had asked Your Honor to require go into evidence in some form, *given*

> *what he said, given the fact he's talked about them, we don't see any need to insist that the depositions be played to see the words again.*  So I think for those witnesses, designations …  We don't need them.  We can save some time.

*VLSI Case 1,* Trial Tr. 779:21-780:3.  This was not an isolated representation:

> MR. LEE: And after Dr. Conte finished and the cross finished, we actually said to them, you know, you don't have to play it if you don't want to.  We're not going to insist on it.

*Id.* 775:17-19.  Intel's ultimate position at the first trial was sensible, and should again apply here.

Intel's requested relief is also overbroad and not properly suited for a motion *in limine,* including because it seeks to preclude an ill-defined category of "otherwise inadmissible testimony" from being used on demonstratives.  The parties have agreed to a trial disclosure schedule that allows both parties to object to demonstratives *and* deposition testimony in advance of their presentation.  Intel has provided no reason that these objections could not be resolved through that process.

## VII.    MIL NO. 7: Exclude Incomplete, Selective References To Entities That May Benefit From Potential Recovery By VLSI

Intel's motion *in limine* number 7 to exclude "incomplete, selective" evidence of VLSI's investors does not accurately reflect the record and lacks substantive merit.

As an initial matter, VLSI did not offer evidence concerning its investors at trial in the lead case: *Intel* did.  The evidence about which Intel now complains came in through NXP witness James Spehar in response to cross-exam questions posed by Intel's counsel.  *VLSI Case 1,* Trial Tr. 299:23-300:12.  Intel has nobody but itself to blame for asking Mr. Spehar to testify about VLSI's investors.

Intel falsely contends that Mr. Spehar's testimony—elicited by Intel—was factually incorrect, and thus should be excluded from the upcoming trial.  But as Intel knows, Mr. Spehar's testimony was truthful and accurate.█████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████



Thus, Mr. Spehar's trial testimony about VLSI's owners in response to Intel's cross-exam questions was entirely consistent with the testimony that Intel had already obtained from VLSI during discovery.  Moreover, given the relationship between VLSI and NXP, which includes a revenue share agreement concerning the asserted patents, it is not surprising that Mr. Spehar as NXP's corporate representative would have taken the time to familiarize himself at a high level with information concerning VLSI's owners before testifying in Court.

Intel's motion *in limine* also improperly attempts to bootstrap evidence concerning VLSI's owners as a basis for Intel to offer evidence about Fortress.  Intel is conflating apples and oranges. As explained in VLSI's pending motion *in limine* concerning Fortress, D.I. 442 at 28-34, ███ ████████████ and the evidence that Intel is attempting to offer regarding Fortress is entirely irrelevant while also being obviously prejudicial to VLSI and confusing to the jury.  Evidence about Fortress will not somehow become relevant or not prejudicial if the truthful and innocuous fact that VLSI is owned by outside investors such as pension funds is offered at trial.

Furthermore, and in any event, VLSI should be permitted to bring in evidence of these investors, particularly if Intel opens the door by raising questions or making inferences about where such amounts might go, or by arguing or suggesting—as Intel did in closing arguments in the first

trial—that ███████████████████████████████████████████████ .

*E.g. VLSI Case 1,* Trial Tr. 1603:25-1604:6.  Under the circumstances, it would certainly be fair for VLSI to offer evidence that its owners are in fact primarily pension funds, retirees, universities and other outside investors, so that the jury has a fair picture of where any award will actually go.

Intel's motion *in limine* should be denied in full.

## VIII.   MIL NO. 8: EXCLUDE EXPERT OPINION ON INFRINGEMENT UNDER DOCTRINE OF EQUIVALENTS

Intel's MIL No. 8 is Intel's ***third*** attempt to exclude VLSI "from offering any infringement theory at trial under the doctrine of equivalents."  Mot. at 12.  Despite having already unsuccessfully moved on the exact same issue two times—including a motion for summary judgment (D.I. 257) and a *Daubert* motion (D.I. 268)[2]—Intel returns to the Court for a ***third*** time seeking through the exact same arguments to exclude the same evidence regarding Intel's infringement under the doctrine of equivalents.

Intel's motion provides ***no*** new law and ***no*** new facts for seeking that very same, already twice-denied, result.  The Court heard argument on this identical issue on March 24, 2021, reviewed VLSI's submission of evidence related to Intel's infringement under the doctrine of equivalents, and denied Intel's *Daubert* motion to exclude the exact same evidence that Intel again seeks to exclude here.  *See,* Ex. 98 ("Daubert on DOE – Denied: VLSI can present evidence through their expert at trial and this can be addressed again at the directed verdict stage"); *see, also,* D.I. 450 (Hr'g Tr., March 24, 2021), Exs. 99-101.

Notably, Intel has already agreed that the denial of a Daubert motion should "apply with

---

[2] *See* D.I. 452, Case No. 6:21-cv-57, (VLSI's Opposition to Intel's Daubert) at 2-8 (incorporated herein); D.I. 442 (VLSI's Opposition to Intel's Motion for Summary Judgment) at 1-5 (incorporated herein).

equal force" to an overlapping motion *in limine*:

> MR. HATTENBACH: The Daubert was denied, and for the same reasons this motion should fair the same.
> THE COURT: That sounds right to me, but let me hear from Intel.
> MR. MUELLER: Your Honor, this is Joe Mueller again.  We believe ***Your Honor's ruling on the Daubert motion does apply with equal force here*** so we're not going to reargue the positions.  We just want to maintain our prior positions, but we won't rehash that.

Ex. 95 at 64:20-65:3 (*VLSI Case 1*, 1/20/2021 Sealed Tr.). By repeating the exact same arguments in this motion, Intel has failed to provide any reason why the Court's previous rulings would not continue to "apply with equal force here."

Further, Intel's motion here suffers from additional flaws beyond its denied *Daubert* motion. For example, Intel does not cite any case granting a motion *in limine* to exclude allegedly 'undisclosed' expert opinions.  Court's routinely reject such efforts to exclude allegedly "previously undisclosed" expert opinions:

> Defendant argues Dr. Kappelman's previously undisclosed infringement opinions regarding Murphy's website outside the scope of Claim 30 should be stricken. … As the Court noted during the May 26, 2015 hearing regarding the same, Defendant may object to any expert's testimony on a case-by-case basis to the extent it believes any expert is testifying as to matters that exceed the scope of his report. Accordingly, Defendant's Motion to Exclude is denied as to this ground.

*Freeny v. Murphy Oil Corp.*, 2015 WL 11089600, at *2 (E.D. Tex. June 4, 2015);

> The Court finds it unnecessary to exclude Dr. Trimberger's disclosures in order to eliminate any possibility that Dr. Trimberger may offer testimony at trial regarding opinions that were not properly disclosed, or touches on topics that have been previously excluded. All witnesses are expected to be aware of any orders relevant to their testimony, and lawyers examining witnesses should take care to avoid inviting witnesses to violate motions *in limine* or any other order.

*PACT XPP Techs., AG v. Xilinx, Inc*., 2012 WL 1205855, at *2 (E.D. Tex. Apr. 11, 2012).

For the foregoing reasons, VLSI respectfully requests that Intel's motion be denied.

## IX.   MIL NO. 9: Exclude Argument Or Evidence Of Willful Infringement

Intel's motion *in limine* No. 9, filed as a single motion of less than two pages, requests

multiple sweeping forms of relief, all of which disregard and contradict both this Court's past orders and the case law regarding willful infringement. This Court already ruled that there are sufficient disputed facts related to VLSI's willfulness claim to go to a jury. D.I. 395, 85:24-25. This Court also already held that "the fact witnesses are not going to get to give opinions . . . If the question is, does it read on any of the patents or not read on any of the patents, that's an opinion and that witness isn't going to get to testify about that." Ex. 95, (*VLSI Case 1*, 1/20/2021 Sealed Tr.), 40:15-41:7. These holdings resolve all of the issues raised by this motion.

Primarily, Intel requests that "VLSI should not be permitted to offer any evidence or argument regarding willful infringement to the jury." Mot. at 13 n.5. This request, plainly and unambiguously, contradicts this Court's ruling denying Intel's motion for summary judgment on VLSI's willful infringement claim. D.I. 395, 85:24-25. Intel's denied motion was briefed and argued at length, and Intel does not even pretend to offer arguments for reconsideration now. It is procedurally improper for Intel to attempt to "sneak in" a motion for reconsideration in this way. For the reasons discussed at length in briefing and oral argument on the previous motion, VLSI's willful infringement claim should be heard by the jury. *See* D.I. 446; D.I. 395, 61-85.

Separately, but to the same effect, Intel requests that the Court exclude the evidence supporting VLSI's willfulness claim. Exactly echoing its arguments on its previous summary judgment claim, Intel argues that each of these pieces of evidence is not on its own sufficient to support a willfulness claim. But, as VLSI explained on the previous motion and as the Court agreed, willful infringement is a "totality of the circumstances" inquiry under which the finder of fact is to consider the evidence as a whole, not in isolation. *See*, *e.g.*, D.I. 395, 71:5-12. For the same reasons the Court denied Intel's summary judgment motion regarding willfulness, the Court should not exclude from trial the evidence supporting willfulness.

Finally, Intel requests that, contrary to the Court's rulings on the exact same issue in the first trial between the parties, Intel's lay witnesses be allowed to testify to Intel's noninfringement.[3] Intel does not identify any reason to depart from the Court's well-reasoned rulings on this subject or the well-settled policy that lay witnesses should not offer opinions of noninfringement. *See, e.g.*, *Cybergym Research, LLC v. ICON Health & Fitness, Inc.,* 2007 WL 9724237, at *2 (E.D. Tex. Oct. 7, 2007) (rejecting argument that lay witness deposition testimony was providing a "technical demonstration" of the accused product, holding that witness was "providing a legal determination of infringement" and would be excluded); *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1092 (Fed. Cir. 2014) (affirming district court ruling excluding accused infringer's Chief Engineer from "opin[ing] on whether the accused products infringed [the asserted patent] to support Citrix's good faith belief of non-infringement.""); *see also, e.g.*, *Apotex, Inc. v. Cephalon, Inc.*, 2017 WL 2362400, at *4 (E.D. Pa. May 31, 2017) (it is "inappropriate, under Federal Rule of Evidences 701 and 702, for a lay witness, not previously qualified as an expert, to offer an opinion on the technical question of infringement").

Intel similarly offers no reason to depart from the extensive precedent precluding lay witnesses, as the Court ordered in the first case between the parties, from offering noninfringement opinions **even where willfulness is alleged**. *See, e.g.*, *QPSX Developments 5 Pty Ltd. v. Nortel Networks, Inc.*, 2008 WL 728201, at *3 (E.D. Tex. Mar. 18, 2008). In *QPSX*, for example, willfulness was at issue in the case and ultimately led to an enhanced verdict. *See id.* at *2 ("Therefore, the court finds that a multiplier of 1.7 should be applied to the jury's award in light of Nortel's willful infringement."). However, the Court nevertheless properly excluded a

---

[3] This issue was extensively briefed and argued previously, and the Court ruled that Intel's lay witnesses "are not going to get to give opinions" regarding infringement. Ex. 95 (*VLSI Case 1*, 1/20/2021 Sealed Tr.) 40:15-16. Intel provides no justification for re-raising this issue now.

noninfringement opinion from a lay witness employed by Nortel.  *Id.* at *3 ("Kummer was not identified as an expert witness and did not file an expert report; therefore, the court properly precluded his opinion testimony.").

The Court's decision on this same issue in the first case between the same parties was well-supported and should not be overturned here; courts nationwide follow this policy.  As another example, in *Briese Lichttechnik Vertriebs GmbH v. Langton*, 2012 WL 5457681 (S.D.N.Y. Nov. 8, 2012), willfulness was alleged.  *Id.* at *8 ("Because a genuine dispute of material fact precludes resolution of the infringement issue, summary judgment must also be denied as to the issue of whether any infringement was willful.").    Nonetheless, the Court properly excluded a noninfringement opinion from a lay witness employed by the defendant.  *Id.* at *6 ("[A]s a lay witness, Mr. Ortiz cannot parse the terms of the patent claims to opine as to whether the patent reads on the B2Pro umbrella reflectors."); *see also, e.g.*, *Hypertherm, Inc. v. Am. Torch Tip Co.*, 2009 WL 435324, at *4 (D.N.H. Feb.19, 2009) (although willfulness at issue, Court holds "no lay opinion testimony will be permitted on the issues of infringement and patent invalidity"); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F. Supp. 2d 147, 154-55 (D.R.I. 2009) (same).

To be sure, some courts have held that testimony such as that Intel proposes eliciting could be relevant at a **bench trial** on willfulness.  But, as discussed for example in the *Milwaukee Tool* matter, such lay opinion testimony is too prejudicial for a jury trial:

> Snap–On asserts that, for purposes of combating an inference of willfulness, it was prejudiced by the erroneous exclusion of certain testimony about its employees' views on the validity of the patents, which it believes would have explained why it declined to take a license to them. … The Court excluded this testimony because the witnesses' lay invalidity opinions were not admissible. … *[A]lthough Fuhreck and the other witnesses might have offered a limited window into Snap–On's subjective beliefs regarding invalidity, the danger of juror confusion was too high.* The opinions were not from experts and pre-dated the Court's claim construction by several years. As a result, considerations under Federal Rule of Evidence 403 obliged the Court to exclude the testimony.

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 288 F. Supp. 3d 872, 890 (E.D. Wis. 2017).

The only cases Intel cites provide no support for its attempt to overturn this Court's existing rulings and create new law in the process. *Eko Brands LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367 (Fed. Cir. 2020), addressed whether phrases such as "especially worthy of punishment" in a willfulness jury instruction constituted legal error. *Id.* at 1378. *Chamberlain Grp., Inc. v. Lear Corp.*, 2011 WL 13254690, (N.D. Ill. Mar. 22, 2011), addressed testimony regarding attempts to "invent around" the patent-in-suit. *Id.* at *4. Neither of these cases support allowing lay witnesses to arrogate the role of experts, and the Court should deny Intel's motion in full.

## X.     MIL NO. 10: Exclude Argument, Testimony, Or Suggestion That Intel Is A "Patent Holdout" Or Refuses To Take A License Outside Of Litigation

Consistent with the Court's prior rulings, VLSI does not intend to refer to Intel as a "patent holdout" or state that Intel "refuses to license patents outside of litigation." Mot. at 14. Nor does VLSI intend to state that Intel "is a holdout or is 'unwilling[] to license absent a lawsuit.'" *Id.* VLSI believes that this fairly resolves Intel's MIL No. 10. VLSI does not know the precise scope of Intel's trial presentation, however, and it is conceivable that Intel could open the door to these matters. VLSI reserves the right to present appropriate rebuttal testimony and to raise those issues as necessary with the Court.

To the extent that Intel's MIL No. 10 seeks to limit or preclude VLSI's damages experts from testifying about settlement agreements that were discussed in their expert reports, the Court has already rejected those arguments, as explained in VLSI's oppositions to Intel's MIL Nos. 1 and 13, which are incorporated herein by reference.

## XI.    MIL NO. 11: Exclude Irrelevant And Prejudicial References To Intel's Size, Wealth, And Financial Performance

Consistent with D.I. 507, Case No. 6:21-cv-57, VLSI does not intend to use disparaging or pejorative characterizations to refer to Intel's size, wealth, or financial performance in its trial

presentation. However, Intel's request that the Court preclude references to "Intel's size, financial performance, and/or market/competitive position," Mot. at 16, is far too broad. For example, Intel's market and competitive positions within the microprocessor industry are relevant to multiple *Georgia-Pacific* factors, including at least factors five ("[t]he commercial relationship between the licensor and licensee"), eight ("[t]he established profitability of the product made under the patent"), and ten ("the benefits to those who have used the invention."). *See Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *see also* D.I. 298-30 (Ex. B), Sullivan Rpt., ¶¶ 245-47, 255-58, 262-64. Intel's own experts claim that "Intel has been a market leader in the microprocessor industry." D.I. 276-07 (Ex. 13), Huston Reb Rpt. (-255) ¶¶ 47, 52. As another example, Intel's and Freescale's revenues, net incomes, and other financial information in 2011-2015 are relevant to the parties' negotiating position and their competiveness in an increasingly competitive marketplace. *See, e.g.*, D.I. 298-16 (Ex. B), Chandler Rpt. ¶¶ 107-129; *see also id.* ¶ 88; D.I. 298-30 (Ex. B), Sullivan Rpt. ¶¶ 28, 79-82, 84-85. *See also State Contr. & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1072 (Fed. Cir. 2003) ("[A]n actual infringer's profit margin can be relevant to the determination of a royalty rate in a hypothetical negotiation.").

Intel's market and competitive positions are highly relevant to multiple issues in the case, and its motion should accordingly be denied.

## XII.   MIL NO. 12: Exclude Reliance On Irrelevant And Prejudicial References To Total Revenues For The Accused Products

Intel filed a similar motion in *VLSI Case 1*, D.I. 362 at 12, which the Court denied with respect to this topic. *See* D.I. 507, Case No. 6:21-cv-57 at 5. In doing so, the Court stated: "They are absolutely relevant. … The accused product revenues are relevant." Ex. 95 (*VLSI Case 1,* 1/20/2021 Sealed Tr.) 57:12-18; *see also id.* 58:17-18 ("Comments about the sales of the specific accused products is relevant and okay.").

The Federal Circuit opinions on which Intel relies merely support the proposition that a plaintiff cannot rely on total revenues without apportioning or to make their damages claim appear reasonable unless the patented component creates the basis for customer demand.[4]  *See* Mot. at 13. For example, in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320-21 (Fed. Cir. 2011), the plaintiff's attorney ran afoul of the entire market value rule by comparing the requested damages to Microsoft's total revenues.  *See id.* (attorney arguing that "the infringer, Microsoft, who violated the patent law, they get to keep 99.9999% of the box and the inventor, whose patent they infringed, he gets the privilege of keeping .00003%").  VLSI is not doing this.

The decision in *Content Guard Holdings, Inc. v. Amazon.com, Inc.*, 2015 WL 11089749, at *5 (E.D. Tex. Aug. 6, 2015), is instructive.  In that case, defendants, like Intel, moved to exclude any reference to their overall revenue based on an assertion that such a reference would violate the entire market value rule.  The court held that the plaintiff's expert would not be permitted to use the defendants' overall revenue to "explain how he arrived at his damages numbers," but that the plaintiff could reference such revenue to the extent that it "is necessary to present its case."  *Id.*  The court noted that "courts in the Northern District of California have reached similar conclusions."  *Id.* at *5 n.3 (citing *Sentius Int'l, LLC v. Microsoft Corp*. 2015 WL 451950 at *11 (N.D. Cal. Jan. 27, 2015) and quoting *Ericsson*, 773 F.3d at 1228); *see also Innovention Toys, LLC v. MGA Entm't, Inc.*, 2012 WL 5384880, at *4 (E.D. La. Nov. 1, 2012) (allowing evidence of the defendant's financial condition "as is relevant for [Plaintiff's] case in chief and for rebuttal").  In addition to the clear relevance of accused revenues in calculating VLSI's damages, Intel's experts have themselves put Intel's revenues

---

[4] See *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("where a multi-component product is at issue and the patented feature is not the item which imbues the combination of the other features with value, care must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product").

at issue by using those revenues to tout that Intel "was a leader in the microprocessor industry" and allegedly "far more successful than SigmaTel, Freescale, or NXP." *See, e.g.*, D.I. 294-28 (Ex. 67) Huston Rpt., Ex. E at 3-5, 9-10 (citing documents discussing Intel's increase in revenues in certain years and placement in sales and revenue rankings). Intel cannot rely on its history and background in support of its damages arguments or claim that it is an innovator, while at the same time excising from that presentation the industry and corporate aspects of its history that Intel believes might negatively impact its case.

Intel's revenues are also relevant to multiple *Georgia-Pacific* factors, including at least factors five ("[t]he commercial relationship between the licensor and licensee"), eight ("[t]he established profitability of the product made under the patent"), and ten ("the benefits to those who have used the invention."). *See Georgia-Pacific Corp.*, 318 F. Supp. at 1120; *see also* Ex. B, Sullivan Rpt., ¶¶ 245-47, 255-58, 262-64; *State Contr. & Eng'g Corp.*, 346 F.3d at 1072 (Fed. Cir. 2003) ("[A]n actual infringer's profit margin can be relevant to the determination of a royalty rate in a hypothetical negotiation.").

The revenues also underscore the importance of the inventions—the fact that they provided such large economic advantages yet no one else had been able to come up with them informs the objective indicia of nonobviousness. Consideration of these objective indicia is not optional: "[o]ur case law is clear that this type of evidence 'must be considered in evaluating the obviousness of a claimed invention.'" *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010). "[A] district court must ***always*** consider any objective evidence of nonobviousness presented in a case." *Id.* (emphasis in original).

## XIII.   MIL NO. 13: Exclude Reliance On Prior Intel Litigation Settlements And, If They Are Admitted Over Intel's Objection, Require VLSI To Raise Litigation Settlements In Its Case-In-Chief

As explained above, the Court already denied Intel's substantially similar motion in *limine*

regarding the Intel litigation settlements discussed in VLSI's damages experts' reports.  Ex. 95 (*VLSI Case 1*, 1/20/2021 Sealed Tr.) 60:13-22 ███████████████████████████████████████

████████████████████████████████████████.");  *id.* 51:4-21 ████████████

█████████████████████████████████████████████);  *VLSI Case 1,* Trial Tr. 1328:16-1329:1 (denying Intel's objection with respect to settlement agreement demonstratives, and noting that disagreements could be taken up on cross).  The Court's prior rulings were well-founded, and there is no reason to deviate from them here.

Intel's motion in this second trial takes its first, already-denied motion, one step further: here, Intel attempts not only to exclude settlement agreements already found to be admissible, but also to force VLSI to introduce the settlement agreements in its case-in-chief and not in rebuttal.[5]  Intel's motion should thus be denied for the independent reason that it requests relief that far exceeds the scope of a motion in *limine*, which is an ***evidentiary*** motion, not a tool that it can use to dictate how and when VLSI presents its witnesses and evidence at trial.  *Luce*, 469 U.S. at 40 n.2.

Intel's arguments in this motion also fundamentally misrepresent the opinions of VLSI's damages experts, Ryan Sullivan and Mark Chandler.  As VLSI has explained many times, and as the Court already saw in the first trial, Dr. Sullivan presents an affirmative reasonable royalty opinion.  Mr. Chandler, on the other hand, is a ***rebuttal*** expert.  His opinions rebut, and provide necessary context for, the reasonable royalty opinions of Intel's expert Mr. Huston.  Mr. Huston's one-sided damages presentation is based in part ███████████████████████

---

[5] Intel also attempts to allege that the Court erred in allowing VLSI to present Mr. Chandler as a rebuttal witness in the first trial.  Even putting aside that such argument is inappropriate in a motion in *limine*, "whether material evidence which could have been received as part of the case in chief should be admitted in rebuttal lies solely within the discretion of the trial court."  *United States v. Sadler*, 488 F.2d 434, 435 (5th Cir. 1974).  The Court's decision was well founded and well within its discretion.

for ████████████████████████████, which are borne of Intel patent licensing practices that studiously avoid any assessment of whether Intel even uses the licensed patents.

In the Fifth Circuit, "[r]ebuttal is a term of art, denoting evidence introduced by a Plaintiff to meet *new facts* brought out in his opponent's case in chief." *Morgan v. Com. Union Assur. Cos.*, 606 F.2d 554, 555 (5th Cir. 1979).  Dr. Sullivan's affirmative damages analysis does not rely on comparable licenses, and does not introduce any of Mr. Huston's ███████████████—those are *new facts* that will be brought out in Intel's case-in-chief.  Mr. Chandler only introduces the settlement agreements to rebut Mr. Huston's one-sided presentation of those new facts.  Indeed, if Intel chooses *not* to present its flawed comparable licensing analysis at trial, then VLSI may not need to present the settlement agreements in rebuttal.  Forcing VLSI to bring Mr. Chandler to discuss the settlement agreements in its case-in-chief, before Intel puts on its damages presentation and before the scope and content of that presentation is established, would not only misapprehend Mr. Chandler's testimony, but also frustrate its purpose and substantially prejudice VLSI's ability to try its case.[6]

For those same reasons, Intel's contentions about the inadmissibility of the settlement agreements due to alleged lack of comparability, or alleged reliance on high dollar amounts to inflate damages, Mot. at 19, miss the point.  Intel's cases merely support the irrelevant proposition that non-comparable license agreements cannot be used by a party in its affirmative damages presentation to artificially inflate the damages award in connection with an analysis of *Georgia-Pacific* Factor 2. To be absolutely clear, that is not what VLSI is doing; VLSI's affirmative damages analysis,

---

[6] Furthermore, Intel's cited rule that testimony may be excluded if it should have been introduced as part of the plaintiff's case-in-chief is inapposite because it "applies to witnesses introduced *at trial*, not witnesses introduced *well before trial*." *Jimenez v. United States*, 2014 WL 3907773, at *3-4 (W.D. Tex. July 25, 2014).  Mr. Chandler's opinions were disclosed in his expert report: he is not bringing out any undisclosed evidence on rebuttal at trial.

presented by Dr. Sullivan, is based on a careful assessment of the value of Intel's use of the asserted patents in its products.  Dr. Sullivan's calculation of this reasonable royalty is independent of any dollar amounts associated with prior litigation settlements, and of Mr. Chandler's analysis.  Neither Dr. Sullivan nor Mr. Chandler use the settlement agreements as part of any affirmative damages calculation.  *See RMail Ltd. v. Amazon.com, Inc.*, 2019 WL 10375642, at *5 (E.D. Tex. June 12, 2019) (only excluding non-comparable licenses in "the factor 2 context," and expressly stating that the order "does not address [the party's] reliance on those four licenses in any other context in [the expert's] report").

Mr. Chandler specifically relies on the settlement agreements to rebut and provide context for Intel's one-sided damages presentation.  For example, Mr. Chandler intends to explain that the settlement agreements are proof that the ███████████ that form the backbone of Mr. Huston's reasonable royalty analysis are in fact not economically comparable to the hypothetical licenses at all, in no small part because they fail to take into account the actual value of Intel's use of the relevant patents.  Mr. Chandler may also explain that the settlement agreements are examples of situations where Intel has entered into licenses for ***more*** than ███████████ contrary to claims by Mr. Huston and other Intel witnesses that Intel only █████████████████████████████ ████████████████████████, and that the economic circumstances of parties at the hypothetical negotiation included that they would have been aware of the existence of these settlement agreements at the time of the hypothetical negotiation.

*Intel Corp. v. Tela Innovations, Inc.*, 2020 WL 7868111, at *20 (N.D. Cal. Dec. 22, 2020) is particularly instructive here.  In that case, Intel moved to preclude a damages expert from relying on "previous licenses involving Intel with large lump sum payments up to ██████████ that are non-comparable to this case," because the expert had "himself classified the licenses as non-comparable."

*Id.*  The court allowed the testimony, because the expert was not "impermissibly using the[ prior licenses] to inflate the effective royalty rates," but rather "to try to demonstrate Intel's 'usual' or 'historical' approach to licensing."  *Id.*  That is precisely what Mr. Chandler does here: rather than use the settlement agreements as part of an affirmative damages opinion, he instead offers them to lend context to Intel's licensing practices and to rebut Mr. Huston's damages opinions.

VLSI is ***not*** relying on the agreements simply to introduce a large number, as Intel suggests. VLSI is relying on the agreements to demonstrate that the amounts Intel paid for the agreements it now relies on as comparable are not commensurate with the scope of the patents licensed or acquired. The Federal Circuit has "previously explained that prior settlements can be relevant to determining damages."  *Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299 (Fed. Cir. 2019); *see also In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("Our cases appropriately recognize that settlement agreements can be pertinent to the issue of reasonable royalties.").  Here, the settlement agreements are not only relevant to Intel's damages analysis, but necessary to counter the false equivalencies Intel has created based on its own licensing policies. Intel may cross-examine VLSI's witnesses and present its own explanations of the settlement agreements, but this issue presents—at best—a significant factual dispute between the experts that should be resolved on the merits, not one for exclusion.

## XIV.   MIL NO. 14: Exclude Reliance On Dr. Sullivan's Undisclosed And Unduly Prejudicial Per-Unit Damages Numbers

Intel's MIL No. 14 is yet another improper attempt both to relitigate issues the first trial and to force VLSI to present its case at the second trial in a manner more favorable to Intel.  Here, again, Intel requests relief to which it is simply not entitled.  The Court already resolved exactly this question during the trial in *VLSI Case 1*.  And as the Court correctly ruled after extensive argument, it is entirely proper for Dr. Sullivan to act as a "human calculator" and explain what VLSI's total

running royalty is on a per-unit basis.  Specifically, during trial in *VLSI Case 1*, Dr. Sullivan walked

the jury through the exact damages methodology disclosed in his expert report, and then divided the

total damages by the number of units to show the effective per-unit rate.  As the Court ruled, this

was perfectly appropriate and did not result in any prejudice to Intel.  On the other hand, preventing

Dr. Sullivan from performing this simple arithmetic would severely prejudice VLSI's ability to

present its case in a way the jury can understand.

Demonstrating the weakness of its position, Intel's MIL No. 14 misstates both the facts and

the law.  On the key facts, Intel is simply incorrect.  According to Intel, "[t]hroughout the entirety of

this case, Dr. Sullivan opted to present a single type of royalty—a lump sum."  Mot. at 25.  But quite

to the contrary, Dr. Sullivan has consistently explained that damages in this case should be a running

royalty. █████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████ Dr. Sullivan then goes on ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ .

In contrast, Dr. Sullivan has never advocated for ██████████████████████████ .

This fact defeats Intel's motion.  The only legal authority supporting Intel's position relates to the

differences between lump sums and running royalties generally.  *See, e.g.*, Mot. at 25 (citing *Lucent*

*Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009) for the proposition that

"[s]ignificant differences exist between a ***running royalty*** license and a ***lump-sum*** license" because "[c]ompared to a ***running royalty*** analysis, a ***lump-sum*** analysis involves different considerations."). All of those "different considerations" have long been at issue here, because the form of license (paid-up lump sum vs. running royalty) has always been disputed. Intel cites no cases where a court prevented a party from explaining what its running royalty calculation comes out to on an effective per-unit (or any other) basis, and no case that explains how or why this could be prejudicial. And for good reason—when courts have addressed similar issues, they have consistently held that witnesses are entitled to do simple math to make their positions more understandable. *See, e.g.*, *United States v. Sepulveda-Hernandez*, 752 F.3d 22 (1st Cir. 2014) (affirming trial court's decision to allow a witness to perform a series of multiplications and additions, explaining that "the district court did not abuse its discretion in permitting the chemist to perform simple multiplication"; "[s]imple arithmetic, such as ordinary multiplication, is a paradigmatic example of the type of everyday activity that goes on in the normal course of human existence"); *McPherson v. Rowe*, 366 F. App'x 43, 45–46 (11th Cir. 2010) (explaining that testimony using the "generally-accepted mathematical formula for calculating speed using the weights of two colliding objects" "is not the type of information that Rule 26 requires an expert to include in his report").

Intel's motion provides no specific examples of any prejudice, because there are none. Intel's vague suggestion that its experts might have done something differently had they known this form of royalty might be at issue, is belied by those experts' reports. Intel's experts actually ***did*** respond to Dr. Sullivan's opinions proposing a running royalty. For example, ███████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ In this section, ███████████████

Further, if Mr. Huston had wanted to evaluate VLSI's running royalties in terms of their effective per-unit impact, he could easily have done so without Dr. Sullivan performing that simple division for him.  Intel's speculation now that it would have somehow behaved differently if such simple arithmetic had been performed for it is not defensible.  In reality, rather than seeking to avoid prejudice or providing any actual basis for exclusion, Intel's motion is an improper attempt to dictate VLSI's trial presentation by preventing a Ph.D. economist from dividing two numbers.  This unsupported motion should be denied.

## XV.    MIL NO. 15: Exclude References To Innography Patent Strength Scores

Intel is back for its **fourth** bite at the Innography exclusionary apple.  Despite having already unsuccessfully moved on the exact same issue three times—including a *Daubert* motion (D.I. 266), and two motions *in limine* (D.I. 362, MIL No. 7; D.I. 501, Case No. 6:21-cv-57)—Intel returns to the Court for a **fourth** time seeking through the exact same arguments to exclude evidence or argument regarding Innography.  Intel's arguments have not improved with age.

Intel's motion provides **no** new case law and **no** new factual justification for excluding the Innography evidence.  Indeed, Intel's motion completely disregards facts that came into evidence in the first trial between the parties, which the previous **seven** rounds of briefing did not address, and which further shows that the Innography evidence is relevant and admissible.  For example, Mr. Spehar testified that "NXP uses this service [that] looks at patents, and what we found was is these patents score in the top ten percentile of patents. … [That source is] called Innography."[7]  *VLSI Case 1,* Trial Tr. 279:18-25.  Further, when Mr. Spehar was asked "do other companies use and rely

---

[7] While Mr. Spehar was specifically referencing the patents at issue in the first trial, the patents at issue in the -255 case also score in the top ten percentile of patents.

on that third-party service?" he responded "Yes.  They do."  *Id.* 280:1-3.

Further, the procedural history of the Court's repeated denials of Intel's motions to exclude the Innography evidence is particularly relevant here, because Intel's current motion is nearly word for word identical to its (first) motion *in limine* filed in the first case, which ***Intel agreed should be denied***.  On January 5, 2021, your Honor correctly denied Intel's *Daubert* motion relating to the Innography evidence, ruling:

> I'm going to deny this motion, this Daubert motion.  I understand what you're saying.  But it sounds to me like you all are actually in agreement with what's going to happen at trial. And I think what's going to happen at trial is a vigorous cross-examination and VLSI will -- their argument on Innography will rise or fall based on what their experts say on direct and what you say, ask them on cross.

D.I. 411 (Hr'g Tr., Jan. 5, 2021) at 22:13-20.  Then, when the Court heard argument on Intel's (first) motion *in limine* in the first case regarding Innography, ***Intel agreed that the denial of the* Daubert** ***motion should "apply with equal force"***:

> MR. HATTENBACH: The Daubert [on Innography] was denied, and for the same reasons this motion should fair the same.
> THE COURT: That sounds right to me, but let me hear from Intel.
> MR. MUELLER: Your Honor, this is Joe Mueller again.  We believe Your Honor's ruling on the Daubert motion does apply with equal force here so we're not going to reargue the positions.  We just want to maintain our prior positions, but we won't rehash that.

Ex. 95 (*VLSI Case 1*, 1/20/2021 Sealed Tr.) at 64:20-65:3.

By repeating the exact same arguments in this motion, Intel has failed to provide any reason why the Court's previous rulings would not continue to "apply with equal force here."

### A.      Intel's Duplicative Arguments Still Fail

Intel argues that the Innography evidence is "irrelevant, unfairly prejudicial and confusing to the jury, and inadmissible hearsay."  Mot. at 26.  Each of these arguments were made in Intel's previous motions, and were summarily rejected by the Court as described above.

For example, Intel first argues the Innography evidence does not "have the required nexus"

to the claims of the asserted patents. Intel's argument relies on identical briefing language, case law, and even a copy/pasted table as its first motion *in limine* on this topic. *See* D.I. 362 at 17-19. Second, Intel argues the Innography evidence is prejudicial because it is "nominally quantitative." Again, Intel's argument relies on identical briefing language and case as its first motion *in limine*. *See* D.I. 362 at 19-20. Third, Intel argues the Innography evidence is hearsay. Again, Intel's argument relies on identical briefing language, case law, and even evidentiary citations as its first motion *in limine*. *See* D.I. 362 at 16-17. Finally, Intel argues the Innography evidence will result in a "sideshow." Again, Intel's argument relies on identical briefing language, and lack of case law, as its first motion *in limine*. *See* D.I. 362 at 20-21.

As described above, the Court already correctly found each of these arguments to be without merit. Further reasons Intel's duplicative motion should be denied are outlined below.

### 1.      The Innography Evidence Is Not Hearsay

Intel's motion fails at least because the Innography evidence is not, as Intel argues, hearsay. Professor Reinman considered the Innography evidence because it is objective, independent third party evidence demonstrating industry acceptance and praise for the asserted patents. D.I. 298-27 (Ex. B), Reinman Reb. Rpt. ¶¶ 414-417. That is classic objective indicia of nonobviousness. Moreover, the evidence was presented in Professor Reinman's expert report *in response* to Intel's own experts asserting, incorrectly, that the inventions were obvious and there was no evidence of industry acceptance or praise for any of the asserted patents. D.I. 294-37 (Ex. 76), Leeb Rpt. ¶ 466.

Intel's motion fundamentally misdescribes how VLSI's experts intend to use the evidence at issue. Intel erroneously asserts that the evidence is being "offered for the truth of the matter asserted – namely, that the patents have high patent strength scores and are thus 'strong.'" Mot. at 30. Not so. As VLSI and its experts have explicitly (and repeatedly) explained, the evidence is being presented to, for example, show industry acceptance and praise for the asserted patents. That itself

is quintessential objective indicia of nonobviousness.  The issue in this context is not whether Innography's statements are true; it is the fact that the statements were made.  VLSI does not know how it or its experts could be any clearer about this: the statements are not being offered for their truth (*e.g.*, to show that the patents deserved the particular evaluation made of them by Innography), but instead, in one context, to show that the statements—which constitute praise and respect for the patents—were made.

As another example, as VLSI previously explained, the Innography evidence is relevant to damages—including to the 'hypothetical negotiation' and to at least *Georgia-Pacific* factors 8 and 10. *See* D.I. 502, Case. No. 6:21-cv-57.  Intel's largely copy/pasted motion does not even attempt to address this fact.  In this context the same is true: the statements are not being offered for their truth, but instead to show that they were made.

The evidence is accordingly not hearsay and Intel has failed to articulate any proper basis for its exclusion.  *See e.g.*, *Hynix Semiconductor Inc. v. Rambus Inc.*, 2009 WL 112834, at *14 (N.D. Cal. Jan. 16, 2009), *aff'd*, 645 F.3d 1336 (Fed. Cir. 2011) ("Exhibit 5640A was a redacted article announcing that Dr. Horowitz received an IEEE Solid–State Circuits Technical Field award.  As the court noted in ruling on the objection at trial, ***the article does not constitute hearsay because it was admitted not for its truth, but as a proper secondary consideration of nonobviousness in the form of praise from others in the industry***.").  The analysis can end here, on that independent basis.

### 2.    Even If The Innography Evidence Was Hearsay, It Would Be Admissible Under The Federal Rules Of Evidence

Nonetheless, even if the Innography evidence was hearsay (and it is not), it should still be admitted because it is of the type reasonably relied upon by experts in the field and its probative value substantially outweighs any prejudicial effect.  FED. R. EVID. 703.

(a)    Experts In The Field Regularly Rely On This Exact Type Of Evidence

Experts in the field regularly, and for good reason, rely on evidence of the exact sort Intel is seeking to exclude here.   Indeed, ***Intel's own expert in this case relies on the exact sort of Innography evidence Intel seeks to exclude***.   Mr. Huston, in his report relating to damages, repeatedly relies on a presentation by ▮▮▮ targeted to Intel relating to the value of certain ▮▮▮ patents.   *See* D.I. 276-07 (Ex. 13), Huston Reb Rpt. (-255) at nn. 890, 908, 941 (citing 93001DOC00023712).   This presentation, dated 2013, took place while ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.   D.I. 381-19 (Ex. 76), Huston Dep. 154:13-24.   In the presentation, ▮▮▮ used the exact sort of Innography evidence Intel seeks to exclude to argue about the quality of its patents. D.I. 381-20 (Ex. 77), 93001DOC00023712.

Numerous sophisticated companies in the industry likewise rely on the same type of information from Innography.   For instance, Intel itself appears to be an Innography customer.   Intel's motion references Innography evidence for patents other than the patents-in-suit that Intel could only have obtained by subscribing to Innography.   Mot. at 28-29.   And as explained in VLSI's numerous oppositions to Intel's duplicative motions, other prominent companies in the industry such as Microsoft, Yahoo, and Western Digital also use Innography.   D.I. 310-02 at 7-8.   As another example, as explained above, NXP relies on Innography.   *VLSI Case 1,* Trial Tr. 279:18-25.   *See also* D.I. 381-21 (Ex. 78) at 5 ("With more than 350 global users across all product industry categories, INNOGRAPHY achieves user satisfaction far above the industry average and has been used widely both in academia and business.").

Not only is Innography relied on by experts and companies in the industry, but it is relied on by experts in litigation for the exact purpose VLSI's experts have relied on the evidence here.   For example, Innography evidence was recently admitted with approval by Judge Gilstrap in the trial in

*Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066 (E.D. Tex.). *See* Ex. 102, *Optis*, Dkt. 488 Plaintiff's Final Trial Exhibit List; Ex. 103, *Optis*, Dkt. 536 Plaintiff's Proposed Findings Of Fact.

Because experts regularly rely on this type of evidence, the Innography evidence would be admissible even if it was hearsay, so long as its probative value substantially outweighs any prejudice.  As explained below, it does; there is no legally cognizable prejudice, and the evidence is highly probative of issues Intel itself has raised.

        (b)      <u>The Probative Value Substantially Outweighs Any Prejudice</u>

        (1)      The Innography Evidence Is Highly Probative As An Objective Indicator Of The Patents' Nonobviousness

Despite the direct relevance of the Innography evidence to damages, Intel's motion exclusively focuses on nonobviousness.  Even if Intel were correct, and the Innography evidence was *only* relevant to nonobviousness, Intel's motion would still fail.

Innography is an independent third party that provides objective patent-related evidence to the industry.  The Innography evidence, which constitutes praise and respect for the patents-in-suit, is highly probative as objective indicia of those patents' nonobviousness.  The Innography evidence has a direct nexus to those patents' claims, as Innography's analysis is indisputably based on patented claims.  D.I. 381-22 (Ex. 79), VLSI-19-977WTX00068419.  Further, the evidence comes from a third party that specializes in intellectual property.  Innography is an entity which knows and understands intellectual property.  Innography's praise of the asserted patents is precisely within their expertise.

Moreover, on the subject of expertise, Innography bases its evaluation in part on a published analysis performed by professors and fellows from the University of Texas at Austin, Stanford Law School, and the George Mason University School of Law, along with the Honorable Kimberly A.

Moore of the U.S. Court of Appeals for the Federal Circuit.  That analysis was published in the UC Berkeley, Public Law and Legal Theory Research Paper Series; in the Georgetown Law Journal; and in the Antonin Scalia Law School, Law & Economics Research Paper Series.

For the reasons noted above and those explained in VLSI's numerous oppositions to Intel's duplicative motions, the Innography evidence is probative and reliable.  Intel's complaints about probative value are simply attacks on evidence that Intel does not like because it does not favor Intel, but this cannot justify exclusion.  For example, Intel resorts to arguing about the criteria that Innography considers and discusses Innography's praise for patents other than the patents-in-suit. Mot. at 27-29.  These are not proper considerations for the admissibility of objective indicia of nonobviousness.  Intel has no authority for asserting that industry recognition of an asserted patent is inadmissible because the infringer disagrees with the third party's conclusion, or the third party has also discussed other non-asserted patents.  Intel's arguments would, in effect, foreclose consideration of *any* industry recognition or praise in *any* patent case simply because the defendant purported to disagree with that praise.  Intel's arguments go to weight, not admissibility.

(2)      Admitting The Evidence Would Not Prejudice Intel

Facts are not prejudicial to a litigant simply because they refute an argument that litigant wants to make.  There would be no prejudice to Intel, in any legally cognizable sense, from the inclusion of the Innography evidence.  To the contrary, VLSI needs to present this evidence because, among other reasons, Intel's experts ignored it and then incorrectly asserted that no such evidence existed.  If the Innography evidence were excluded, it would be VLSI who was prejudiced because, for example, it would allow Intel's experts to put forward factually incorrect arguments without VLSI's experts being able to respond.

Exclusion of the evidence would not only be prejudicial to VLSI; it would be legal error. The Federal Circuit instructs, "[o]ur case law is clear that this type of evidence 'must be considered

in evaluating the obviousness of a claimed invention.'" *Transocean Offshore Deepwater Drilling, Inc.*, 617 F.3d at 1305. "[A] district court must *always* consider any objective evidence of nonobviousness presented in a case." *Id.* (emphasis in original). That the evidence supports VLSI's position and not Intel's does not give rise to a form of "prejudice" that would warrant exclusion.

There is no legitimate basis for Intel's arguments about alleged prejudice. For example, Intel asserts with no basis that jurors might consider the Innography evidence "for impermissible purposes." This is fantasy. Intel cannot exclude evidence it disagrees with simply because it can imagine a hypothetical scenario in which evidence is misused.

Intel similarly argues that the evidence is "nominally quantitative" and hypothesizes that jurors could be misled because the evidence includes numbers. Mot. at 29. This, too, has no basis in reality. It is pure conjecture on Intel's part. Parties present evidence with numbers in nearly every case. Intel is presenting large quantities of its own evidence with numbers in this case. The presence of numbers is not inherently prejudicial, and the cases Intel cites do not support any such proposition. *See Personalized Media Commc'ns, L.L.C. v. Zynga, Inc.*, No. 2:12-cv-00068, D.I. 232, at 1 (E.D. Tex. 2013) (excluding evidence that did "not pertain specifically to any of the patents-in-suit"); *Z.H. v. Abbott Labs., Inc.*, 2017 WL 134750, at *5 (N.D. Ohio Jan. 13, 2017) (excluding an expert's personal opinion where the expert did "not supply the basis" for that opinion).

In sum, even if the evidence were considered hearsay—and it is not—Intel's motion should be denied because the evidence is admissible under FED. R. EVID. 703.

### 3.     Including Relevant Evidence Is Necessary And Will Not Waste Time

Intel concludes by arguing that it would be a waste of time to present evidence that the Federal Circuit says "must" be considered. VLSI strongly disagrees. Intel argues that the evidence would result in an "unnecessary sideshow" because "Intel would need to place the Innography scores in context." Mot. at 31.

First, Intel's motion continues to ignore the events of the first trial between the parties.  In the first trial Intel's motions were denied, Innography evidence was presented, and no "unnecessary sideshow" occurred.  There is no reason to believe the second trial will be any different.

Second, because the evidence is necessary, it is not a sideshow as Intel suggests.  The same argument could of course be made about any of Intel's noninfringement and other invalidity arguments—arguments that VLSI and its experts dispute.  Resolving such disputes in a balanced and informed manner, and not through pretrial exclusion premised on unsupported arguments about time consumption, is the very purpose of a trial.  When the parties contest a factual matter, each party presents and explains their evidence and the jury decides how much weight should be afforded to that evidence.  Intel is welcome to put forward any proper arguments about the weight VLSI's evidence should be afforded, and VLSI plans to do the same in response to evidence from Intel that VLSI disputes.

### B.    The Innography Evidence Is Independently Relevant To Damages

Intel's motion fails to even acknowledge an entirely independent reason for which the Innography evidence is relevant.  By exclusively focusing on non-obviousness, Intel does not address damages whatsoever.  Intel cannot feign ignorance, as VLSI previously submitted a 10 page brief regarding exactly this subject.  *See* D.I. 502, Case. No. 6:21-cv-57.

Even more puzzling, ***Intel's own experts repeatedly argue*** ███████████████

████████████████████████████████████████████████████████████████

██. Intel's experts also conversely argue ████████████████████████████

████████████████████████. Intel is therefore well aware that evidence of industry praise is relevant to damages, and yet the subject is completely ignored in Intel's motion.

For example, Intel's expert ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████

Second, ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████   ████████████   ██████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

At least two more of Intel's damages experts—including Mr. Huston and Ms. Davis—also relied upon and/or mirrored Dr. Colwell's foregoing opinions. *See* D.I. 276-07 (Ex. 13), Huston Reb. Rpt. (-255) ¶¶ 98-101, 139-140, 1165-1166, 1173-1174, 1282; Ex. 104, Davis Reb. Rpt. (-255) at 19, 31, 95.  Mr. Huston applied those opinions in his "hypothetical negotiation" damages analysis and specifically in his analysis of *Georgia-Pacific* factors 8 and 10:

Relying on Dr. Colwell's opinions, Mr. Huston likewise argued ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Accordingly,

VLSI agrees that evidence of industry recognition and praise for the asserted patents is relevant to the "hypothetical negotiation" damages analysis, including for at least the reasons above explained by Intel's expert.  VLSI further agrees that such evidence is directly relevant to at least *Georgia-Pacific* factors 8 ("… the patent; its commercial success; and its current popularity.") and 10 ("nature of the patented invention; … ; and the benefits to those who have used the invention.").

*Georgia-Pacific*, 318 F. Supp. at 1120.  This is likewise well supported by authority.[8]  It thus is **undisputed** that this type of evidence is relevant to damages.

In sum, Intel seeks to argue that the asserted patents received no industry recognition, while preventing VLSI from offering the Innography evidence to prove the opposite.  Intel further wishes to offer purported industry praise of its own patents to argue they are more valuable than VLSI's asserted patents.  Intel thus alleges both the absence, and presence, of industry praise to support its own damages theories, while seeking to prevent VLSI from doing the same.

### C.   Innography Evidence Related To The '522 Patent Should Not Be Excluded

The **only** case-specific argument Intel makes relating to the Innography evidence is that the Innography evidence relating to the '522 Patent should be excluded entirely because "VLSI's experts did not identify" that evidence.  Intel's apparent position is that all evidence party's experts do not discuss in their reports should be excluded.  Intel's motion ignores that the information could be elicited through adverse fact and expert witnesses, or through a party's own *fact* witnesses—none of whom are precluded from testifying about *facts* simply because a party's *expert* did not discuss those facts in their report.  As Intel know well, for example, testimony about Innography in the first trial was provided by fact witness James Spehar, whose company (NXP) uses the Innography service.

Intel has provided no proper basis to exclude Innography evidence.  It's fourth attempt at the same arguments should be resolved in the same manner as the first three: the motion should be denied.

---

[8] *See, e.g.*, *TWM Mfg. v. Dura Corp.*, 789 F.2d 895, 900 (Fed. Cir. 1986) (holding that "the Turner invention's immediate commercial success, its satisfaction of a long-felt need, and the absence of a competing suspension possessing all its beneficial characteristics, were factors tending to support a 30% royalty"); *Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538, 1554-55 (Fed. Cir. 1995) (affirming district court's "hypothetical negotiation analysis" which "considered that the '847 patent was a 'pioneer' patent with manifest commercial success" in "determining the reasonable royalty rate").

### RESUBMITTED OPPOSITIONS TO INTEL'S MOTIONS IN LIMINE

With respect to the below motions in limine, the parties have agreed to submit the same briefing that was previously submitted in connection with the trial in Case No. 6:21-CV-00057-ADA (*VLSI Case 1*), with the exception of minor updates to the oppositions to Intel's MIL No. 16 (to remove references to *VLSI Case 1* and add a Case 2-specific example), Intel's MIL No. 17 (to update page number references to Intel's motion), and Intel's MIL No. 18 (to include Case 2-specific examples). In other words, the motion briefing below is materially identical to the briefs that VLSI submitted in opposition to Intel's substantially similar motions from the first trial.  Below is a table containing the Court's previous rulings on these motions, copied from Order On Oral Rulings, *VLSI Case 1*, D.I. 507 (Case No. 6:21-cv-057):

| Dkt. | MIL | MIL Number as resubmitted below | Decision |
|------|-----|--------------------------------|----------|
| 362 | Intel MIL No. 2 – Exclude References to Discovery Disputes | MIL No. 16 | Granted |
| 362 | Intel MIL No. 3 – Excldue References to Intel's Purported Bad Acts and Conduct Outside This Litigation | MIL No. 17 | Granted – unless Intel opens the door |
| 362 | Intel MIL No. 10 – Exclude References to Expert Testimony in Other Cases | MIL No. 18 | Granted |
| 362 | Intel MIL No. 14 – Exclude Comparisons of Burden of Proof Standards | MIL No. 19 | Denied |

### XVI.   MIL NO. 16: Exclude References To Discovery Disputes (Resubmitted)

Intel seeks to "preclude VLSI from … referring to any discovery disputes."  Mot. at 32.  Like many of Intel's other motions in limine, MIL No. 16 fails to identify the specific discovery issue that

Intel is trying to prevent VLSI from referring to.  "Motions in limine should be directed at specific evidence, not broad, vague categories of evidence or testimony." *Linstrom v. QuikTrip Corp.*, 2020 WL 6140553, at *1 (W.D. Mo. Oct. 19, 2020).  The Court, therefore, should deny this motion and rule on specific discovery issues at the time of trial, because several discovery issues that potentially could be covered by this motion would be admissible.

For example, Intel did not produce many simulation tools that VLSI's experts requested to assist them in their analysis of Intel's processors.  Yet Intel's experts criticize VLSI's experts for relying only on the limited set of tools Intel actually produced, and for not also performing analyses using additional, unproduced tools, including tools for other accused products and tools that provide additional functionality.  D.I. 381-7 (Ex. 65, Annavaram Rpt.) ¶¶ 145-84.  Intel cannot be permitted to attack VLSI's analyses on these bases while also preventing the jury from learning that it was Intel itself who withheld those additional tools.

Similarly, Intel has argued that VLSI accused certain Intel products that do not include Speed Shift of infringing the '522 Patent, but waited until the last day of fact discovery to provide a cryptic response to VLSI's interrogatory from December 2019 requesting this information.  Ex. 64 at 104-105.  Federal Rule of Civil Procedure 37 expressly permits attorneys to comment on a party's failure to identify witnesses or documents.  *See* FED. R. CIV. P. 37 1993 ad. comm. notes.  Moreover, VLSI is entitled to show that Intel's attacks are based on Intel's own discovery misconduct.

Indeed, as explained in detail in VLSI's MIL No. 1, including Section V (D.I. 363 at 6-8), VLSI is moving to preclude Intel from presenting factual testimony on subjects for which it either refused to identify witnesses to testify, or for which its witnesses were not prepared to testify in a Rule 30(b)(6) capacity.  To the extent that VLSI's MIL No. 1 is not granted, VLSI should be permitted to explain to the jury that Intel withheld those facts until trial.

## XVII.   MIL NO. 17: Exclude References To Intel's Purported Bad Acts And Conduct Outside This Litigation (Resubmitted)

Intel argued throughout discovery, and plans to argue at trial, that it could not possibly have infringed any patents because that is forbidden by a corporate "Code of Conduct" that Intel always follows.  VLSI intends to rebut these arguments by showing that Intel frequently fails to follow the very Code of Conduct on which they are predicated.  This evidence is both relevant and not unfairly prejudicial to Intel, which has chosen to make these false assertions that VLSI will need to rebut. The evidence should accordingly not be excluded.

Contrary to Intel's arguments, *see* Mot. at 33-35, VLSI's evidence of Intel's breaches of its Code of Conduct are directly relevant to the case—in many different ways.  To begin with, Intel does not deny that its breaches of its Code of Conduct are relevant rebuttal evidence to Intel's own arguments relying on that same Code.  Instead, in its motion Intel attempts to recast its longstanding arguments by insisting that its noninfringement is merely "consistent with," but not based on, that Code.  *Id.* at 4.  None of these word games alter the clear relevance of VLSI's evidence, and all of them conflict directly with Intel's own evidence.  Let there be no doubt: during discovery one Intel witnesses after the next testified that Intel does not infringe patents *because* Intel has a policy against doing so:



- D.I. 381-8 (Ex. 66), Interrog. Resps. at 54-55 ██████████████████████████
  ████████████████████████████████████████████████████
  ████████████████████████████████████████████████████
  ████████████████████████████████████████████████

- D.I. 381-10 (Ex. 67), Schooler Dep. 298:10-15 (████████████████████████
  ████████████████████████████████████████████████████
  ████████████████████████████████████████████████████
  ██████████████████████████████████

- D.I. 381-11 (Ex. 68), Samaan Dep. 161:3-15 ███████████████████████████
  ████████████████████████████████████████████████████
  ████████████████████████████████████████████████████
  ████████████████

Intel's attempted recasting of its position, in a manner contrary to the testimony of its own witnesses, is a distinction without a difference. Either way, Intel will parade its Code of Conduct in front of the jury and explain how Intel's noninfringement goes hand-in-hand with a corporate document forbidding infringement. VLSI's evidence of Intel's breaches of that same Code of Conduct are directly relevant rebuttal evidence to that argument.

Beyond rebutting Intel's own arguments, VLSI's evidence is also directly relevant to showing the willful nature of Intel's infringement.[9] Intel's breaches of its Code demonstrate that Intel is willing to take actions that it knows full well are wrong—as shown in part by that Code, in which Intel acknowledges that such actions are improper. Intel's particular types of breaches and their repetitive nature emphasize that Intel is not an innocent actor incapable of willful misconduct. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1932 (2016) ("The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.").[10]

Evidence of Intel's breaches of its Code would not be "misleading and highly prejudicial" to Intel under FRE 403. *See* Mot. at 35. Instead, VLSI's evidence of Intel's breaches of its Code would present a more fair and accurate picture of Intel's adherence—or lack thereof—to that Code. Without

---

[9] Evidence of Intel's breaches is also relevant to Intel's unclean hands defense, as it shows that Intel lacks the clean hands necessary to make this argument. *See, e.g., Keystone Driller Co. v. Gen. Excavator Co.,* 290 U.S. 240, 241 (1933) ("He who comes into equity must come with clean hands"); *Citrix Sys., Inc. v. Workspot, Inc.,* 2020 WL 5884970, at *11-12 (D. Del. Sept. 25, 2020) (striking defendant's unclean hands defense because of defendant's own unclean hands); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.,* 2014 WL 183212, at *38 (W.D. Pa. Jan. 14, 2014) (rejecting equitable argument because the defendant came "before the Court with unclean hands after having engaged in deliberate and sustained copying").

[10] *See also Eaton Corp. v. Parker-Hannifin Corp.,* 292 F. Supp. 2d 555, 573 (D. Del. 2003) (considering evidence of "corporate 'no infringement' policy" in assessing willful infringement); *Intel Corp. v. Future Link Sys., LLC,* 268 F. Supp. 3d 605, 623 (D. Del. 2017) (denying Intel's motion for summary judgment of no willful infringement where plaintiff alleged, *e.g.,* a "corporate atmosphere encouraging employees to 'turn a blind eye' to patents").

the evidence it seeks to bury through this MIL, Intel would be free to erroneously suggest, unconstrained by any of numerous contrary facts, that it is a responsible corporate citizen who always abides by its own Code and therefore could not have infringed VLSI's patents.  Intel should not be permitted to advance that false position and then quash any mention of the facts that disprove it.

VLSI should be permitted to present relevant evidence that would balance the scales, fairly informing the factfinder about the facts Intel itself has chosen to put squarely at issue.  Rule 403 does not exist to let only one party tell its version of the story.[11]  To the contrary, allowing Intel to do that would be unfairly prejudicial to VLSI.

## XVIII. MIL NO. 18: Exclude References To Expert Testimony In Other Cases (Resubmitted)

Intel's motion rests on the faulty premise that only the primary experts who will be testifying in the second trial have provided testimony relevant to issues in this case.  Intel is incorrect—certain opinions of both Intel's and VLSI's other experts are directly relevant to issues here.

Intel's motion also broadly seeks to exclude all testimony from all of Intel's and VLSI's experts in the other cases without specifics.  "District courts routinely deny a motion in limine that does not specify the evidence or argument to be excluded because such a motion is premature." *A.Hak Indus. Servs.*, 2014 WL 12591696, at *1 (collecting cases).  Its motion can be denied on that basis alone.

Intel's motion also makes generalized, non-specific arguments regarding the designated testimony of Intel's expert in the 256 case, Dr. Matthew Farrens.  Mot. at 36.  Intel omits that Dr. Farrens's testimony is directly relevant to, for example, damages, including because Dr. Farrens

---

[11] Intel's cases are inapposite (Mot. at 34-35) because none of those cases considered the inclusion of evidence used to rebut an affirmative argument that a party was incapable of infringement because such conduct was forbidden by a corporate policy.

testifies regarding the importance of performance and power savings to Intel.  *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (an expert's testimony is relevant if it can be applied to the facts at issue).

Intel argues that the testimony of other experts is hearsay, but FRE 804(b)(1)(B) provides an exception for prior deposition testimony "offered against a party who had … an opportunity … to develop it by direct, cross, or redirect examination."  The exception applies here, because Intel had opportunities to cross-examine VLSI's experts and to redirect Dr. Farrens and its other experts.  *See United States v. Ausby*, 436 F. Supp. 3d 134, 151 (D.D.C. 2019) (testimony of expert from former trial admissible where defendant had the ability to cross-examine the witness).

Furthermore, under binding Fifth Circuit precedent, the testimony of Intel's expert witnesses is a party admission and accordingly not hearsay at all.  *See* FED. R. EVID. 801(d)(2).  *Collins v. Wayne Corp.*, 621 F.2d 777, 781 (5th Cir. 1980) (finding expert report was admissible as a party-opponent's statement because the expert "was performing the function that [the party-opponent] had employed him to perform.").  This has been settled law for decades, and district courts within Texas have consistently applied this law to find that statements by a party's expert retained for litigation are admissible.  *See e.g.*, *ABSTRAX, INC. v. DELL, INC*, 2009 WL 10677355, at *1 (E.D. Tex. Oct. 9, 2009) (statements made by party's expert in an entirely different litigation were party admissions under Rule 801(d)(2)); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 2017 WL 2651618, at *4 (E.D. Tex. June 20, 2017) ("Hughes argues this report is not competent summary judgment evidence because it is hearsay, but Hughes' argument appears to conflict with Fifth Circuit law finding an opponent's expert's statement admissible under Rule 801(d)(2)(c).").[12]

---

[12] In arguing otherwise, Intel cites *Fractus, S.A. v. AT&T Mobility LLC*, 2019 WL 4805910, at *2 (E.D. Tex. Sept. 30, 2019), which applied a limitation on *Collins* that, to the best of VLSI's knowledge, has never been affirmed by the Fifth Circuit.  Indeed, to VLSI's knowledge, no court has

Intel argues that the testimony is inadmissible under FRE 401, 402, and 403, Mot. at 35-36,

but as discussed above, Dr. Farrens's testimony is relevant, and Intel has not shown that it is more

prejudicial than probative.  The Court can rule on any other objections in connection with the parties'

deposition designations.  *See, e.g.*, *Pickens v. Jackson*, 2012 WL 3901623, at *3 (E.D. Ark. Sept. 4,

2012) (denying motion to strike unidentified disputed testimony and noting that the court would later

rule on deposition designations).[13]  The Court should deny this motion.

## XIX.   MIL NO. 19: Exclude Comparisons Of Burden Of Proof Standards (Resubmitted)

Intel asks the Court to exclude material "characterizing the burden of proof or other legal

standards with reference to areas of law other than Title 35 of the U.S. Code."  Mot. at 37.  Intel

provides no justification for such a broad pre-trial ruling.  VLSI obviously has no intention of

mischaracterizing any applicable burdens, but ***explaining*** them to jurors in a manner that will be

well-understood is another matter entirely.  Simply reading the jurors provisions from Title 35, which

uses but does not explain those burdens in a manner accessible to laypersons, is unlikely to result in

a proper understanding of such foreign terminology.

"Analogies or images from the juror's experience may be useful tools for explaining the civil

burden of proof."  D.I. 381-33 (Ex. 94), 2 Toxic Torts Litig. Guide § 15:25 (2020).  Even in

---

cited *Fractus* for this new reading of *Collins*.  *Fractus* is not binding precedent on this Court—
*Collins* is.  Even if *Fractus* were binding precedent (and it is not), it is distinguishable: Intel adopted
Dr. Farrens' testimony through its silence during the deposition.  The only objection stated on the
record to these questions was to form (an objection counsel made to nearly every question during
Dr. Farrens' deposition).  Furthermore, *Fractus* involved multiple codefendants and was concerned
with the prejudice associated with one codefendant's expert being used against another codefendant.
No such prejudice exists here: Intel is the sole defendant in each of the -255 and -256 cases.

[13] *Sanchez v. Swift Transportation Co. of Arizona*, LLC, 2017 WL 5643554, at *3 (W.D. Tex. July
19, 2017), cited at Mot. at 25, does not support Intel's position—indeed, the court concluded that it
would ***not*** exclude the testimony.  In any event, the Court should not rule on any objections to
proffered testimony without reviewing the testimony in question.

criminal cases, courts have allowed the government to use analogies to explain the burden of proof, provided that the example does not misstate or mischaracterize the burden of proof. *See, e.g., United States v. Swanson*, 703 F. App'x 487, 489 (9th Cir. 2017) ("The prosecution's use of a jigsaw puzzle analogy … did not misstate the burden of proof"); *Rowland v. Davy*, 2020 WL 1216780, at *8 (C.D. Cal. Jan. 30, 2020) ("the prosecutor's statement for the jury to use common sense and life experience did not undermine the burden of proof"); *United States v. Faye*, 728 F. App'x 120, 124 (3d Cir. 2018) (analogy to Occam's razor not reversible error, where trial court instructed on burden of proof); *Cleveland v. Bradshaw*, 65 F. Supp. 3d 499, 533-34 (N.D. Ohio 2014) (not error to use personal doubts about buying a house to explain "reasonable doubt").[14]

If VLSI seeks to explain burdens of proof or anything else in a manner that Intel believes is inaccurate or prejudicial, Intel can obviously object at that time, which would allow the Court to make an informed decision about such matters based on actual, specific facts.  That approach is far preferable to ruling now, speculatively and in the abstract, in an unduly broad manner that would likely also exclude genuinely helpful and appropriate information.

---

[14] Intel relies solely on one sentence in its cited *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, D.I. 274, at 2 (E.D. Tex. 2014) opinion, in which Intel's motion in limine to exclude "[r]eferences to the 'clear and convincing' standard in the Texas Family Code" was granted.  The opinion provides no context or explanation for this ruling, so it lacks persuasive value.

Dated: March 30, 2021

By:      */s/ Andy Tindel*

Morgan Chu (*pro hac vice*)
Benjamin W. Hattenbach  (*pro hac vice*)
Iian D. Jablon  (*pro hac vice*)
Alan J. Heinrich  (*pro hac vice*)
Ian Robert Washburn  (*pro hac vice*)
Amy E. Proctor  (*pro hac vice*)
Dominik Slusarczyk  (*pro hac vice*)
Elizabeth C. Tuan  (*pro hac vice*)
Charlotte J. Wen  (*pro hac vice*)
Brian Weissenberg  (*pro hac vice*)
Benjamin Monnin  (*pro hac vice*)
Jordan Nafekh  (*pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California   90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
ijablon@irell.com
aheinrich@irell.com
iwashburn@irell.com
aproctor@irell.com
dslusarczyk@irell.com
etuan@irell.com
cwen@irell.com
bweissenberg@irell.com
bmonnin@irell.com
jnafekh@irell.com

Babak Redjaian  (*pro hac vice*)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California   92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
bredjaian@irell.com

J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No.
24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, TX 75652
Telephone: (903) 657-8540
Facsimile:  (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile:  (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
ccherry@swclaw.com
**STECKLER, WAYNE, COCHRAN,
CHERRY, PLLC**
100 N. Ritchie Road, Suite 200
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile:  (254) 776-6823

*Attorneys for VLSI Technology LLC*

10924706

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing instrument was served or delivered electronically via email, to all counsel of record, on March 30, 2021.


<u>        /s/  *Jordan Nafekh*         </u>
Jordan Nafekh

10924706