**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>            Plaintiff,<br><br><br>v.<br><br><br>INTEL CORPORATION,<br><br>            Defendant. | **Case No. 6:21-cv-299**<br><br><br>████████████████<br>█████████ |

## [REQUESTED] PROPOSED JURY CHARGE WITH VLSI OBJECTIONS TO INTEL'S PROPOSED INSTRUCTIONS

VLSI respectfully submits the parties' proposed preliminary and final jury instructions with VLSI's objections.[1] Text in instructions that appears in black is agreed. Text that appears in red is proposed by VLSI and objected to by Intel. Text that appears in blue is proposed by Intel and objected to by VLSI. Text appearing in brackets is alternative text provided by the parties (red for VLSI, blue for Intel).

VLSI reserves all rights to amend, add, or remove instructions, including in response to Intel's failure to abide by its own case narrowing proposal after VLSI provided Intel with its narrowing positions.

---

[1] VLSI requested that Intel provide its objections so that the parties could file a single joint submission, as was done in the -057 case. Intel stated that it would be filing its objections as a separate filing.

## **PRELIMINARY INSTRUCTIONS**

**JURY INSTRUCTION NO. 1.    PRELIMINARY INSTRUCTION TO JURY (AGREED)**

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you alone are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. But do not allow your note-taking to distract you from listening to the testimony. Your notes are only an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's individual recollection of the testimony and evidence.

Until this trial is over, do not discuss this case with anyone. Do not permit anyone to discuss it in your presence. This includes everyone you know: your spouse, children, relatives, friends, coworkers, and anyone that you deal with during the day. During your jury service, you may not communicate any information about this case through any means or by any tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, cell phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any chat room, blog, or social media website such as Facebook, et cetera, or any other way to communicate about this case.

You may not communicate to anyone any information until this case is over, and I have accepted your verdict.

Do not even discuss this case amongst yourselves or with other jurors until the end of the case when I release you to begin to deliberate.

It is unfair to discuss the case before then because you won't have all the evidence in.  And you must have it all in, because you must never become an advocate for one side or the other.

The parties, the witnesses, the attorneys, and everyone associated with the case are not permitted to communicate with you at any time, as in if they happen to see you, they're not even permitted to tell you hello. They are not trying to be impolite.  They are simply following my instructions.

Do not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel. You cannot speak about the case.

Do not conduct any independent investigation of this case. You must make your decision on your verdict exclusively from what you see and hear within this courtroom. Do not try to obtain information from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are dealt with outside your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, or even out loud, to give them some information they need.  It doesn't have anything to do with the merits of the trial in any way.

- 3 -

If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

Do not consider the fact that either I permit a conference to happen or I do not, or the fact that we had a conference, to influence you in any way about how I might feel about this case. The parties could have allowed me to try this case, but they elected not to do that. They elected to have each of you come here and serve as a jury of their peers. That means that as far as you're concerned and I'm concerned in this case, I have no opinion about any issue that they are going to present to you.

I care about the legal issues and getting things right legally, but every decision that's to be made here with respect to the facts is exclusively in your province as a juror. You are the judges of the facts. My opinion does not matter at all.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), 2021-02-22 Trial Tr. 181:16-185:12 (with modifications); *see also* Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 1.2 (with modifications); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), 2020-10-05 Trial Tr. (D.I. 389) 27:22-30:13 (with modifications).

**JURY INSTRUCTION NO. 2.    PATENTS GENERALLY**

This is a patent case. The patents involved in the case generally relate to [computer microprocessors] [computer microprocessors or electronic devices]. That will be explained in much greater detail by the witnesses, and the opening arguments and closing arguments that you will hear.

The plaintiff is seated most closely to you. That is VLSI Technology LLC. You will probably hear them referred to throughout the course of the trial as VLSI. They are the owner of the two patents in this case which are identified as the following:

- United States Patent No. 6,633,187 (which may be called the "'187 Patent").
- United States Patent No. 6,366,522 (which may be called the "'522 Patent"), and

These patents may also be referred to as the "VLSI Patents" or the "asserted patents." There are two patents in this case and you will hear evidence related to each of them.

The defendant who is seated a little bit further over to my left is Intel Corporation, or Intel.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), 2021-02-22 Trial Tr. 185:13-186:8 (with very slight modifications); *see also MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), 2020-10-05 Trial Tr. (D.I. 389) 30:14-31:3 (with modifications).

**A.    VLSI Objections:**

VLSI objects to Intel's reframing of the scope of the VLSI Patents, which relate to computer microprocessors, rather than generically "electronic devices." This is supported by the VLSI Patents themselves. For example, the '187 Patent is titled "Method and Apparatus for Enabling a Stand Alone Integrated Circuit" and specifically discusses that it "may be a *microprocessor.*" *See, e.g.,* '187 Pat., Abstract.    Similarly, the '522 Patent it titled "Method and Apparatus for Controlling Power Consumption of an Integrated Circuit" and similarly discusses that it may be a *microprocessor. See, e.g.,* '522 Pat., 1:30 ("As processing speeds of microprocessors …").    These are not referencing any

"electronic device," but rather microprocessors. There is no real dispute between the parties that the patent discloses types of microprocessors or that all of the accused products are microprocessors. The word "microprocessor" thus provides the jury with a useful, familiar, and completely neutral tool for thinking about the general field of the patent.

Intel's proposed use of the term "electronic device" will result in jury confusion without sufficient understanding of the microprocessor industry. The term will be confusing in the context of the parties' presentation to the jury.

**JURY INSTRUCTION NO. 3.     UNITED STATES PATENTS OVERVIEW (AGREED)**

I will now play a short video for you to give you an overview of patents and the patent system in the United States. [Play Federal Judicial Center Patent Video.]

***Source***: Federal Judicial Center (video).

**JURY INSTRUCTION NO. 4.     UNITED STATES PATENTS (SECOND) OVERVIEW**[2]

Patents in the United States are granted by the United States Patent and Trademark Office. You might hear them referred to during trial as the PTO or USPTO. A patent gives the owner the right to exclude others from making, using, offering to sell, or selling the invention claimed by the patent within the United States or importing it into the United States.

During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a general background here.

To obtain a patent, an application for the patent must be filed with the PTO by an applicant or an inventor.

The application includes what is known as a specification.  This specification includes a written description of the invention, how it works, and how to make and use it to enable others skilled in the art to do so. The specification concludes with one or more numbered sentences or paragraphs.

These are called the "claims" of the patent. The purpose of the claims is to particularly identify what the claimed invention is and to define the scope of the patent owner's exclusive rights under each patent.

After an application for a patent is filed with the PTO, the application is taken and reviewed by a person who has the title of Patent Examiner. A Patent Examiner is a person who, generally speaking, is trained in a specific technological area. The Patent Examiner reviews (or, another way of saying "review" in the patent world is "examines") the patent application to determine whether or not the claims that the applicant has provided to the PTO are patentable and whether or not the specification adequately describes what the claimed invention is.

---

[2] VLSI does not believe any instruction is necessary in light of the Patent Video already included to be shown to the jury. However, if the Court decides that it wishes to provide an additional instruction, VLSI proposes the instruction given in *VLSI v. Intel*.

When the Patent Examiner examines the patent application, the Patent Examiner searches records available to the Patent Office to find what is referred to as "prior art," and he or she also reviews prior art submitted by the applicant.

You're thinking—what is prior art?  Generally speaking, prior art is previously existing technical information and knowledge which Patent Examiners consider to determine whether or not the claims in the application are patentable. The Patent Examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious based on what had come before it. That would be called prior art. The Patent Examiner also may consider whether the claims are directed to subject matter that is not eligible for patenting, such as natural phenomena, laws of nature, and abstract ideas. The Patent Examiner also may consider whether the claims are not indefinite and are adequately enabled and described by the application's specification.

Following the prior art search and examination of the application, the Patent Examiner advises the applicant in writing what the Patent Examiner found and whether or not he or she believes each claim is patentable (in other words, whether it will be "allowed" as a patent).

The Patent Examiner can decide to accept or reject one or more of the proposed claims that have been provided to him or her. The applicant, the person seeking the patent, then responds to what is called the Office Action.  The applicant can cancel certain claims.  The applicant can change the words in the claims.  The applicant can submit new claims.  The applicant can make arguments to the Patent Examiner to get around or overcome that rejection. In other words, it's a negotiation.

This process can go back and forth between the Patent Examiner and the applicant for months or even years until the Patent Examiner is satisfied with the application, and he or she decides that the claims are patentable. At that point upon payment of an issue fee by the applicant, the PTO then "issues" or "grants" a patent with the claims the examiner and the Patent Office have allowed.

This collection of papers, the back and forth that is generated by the Patent Examiner and the applicant during this time is called the "prosecution history." The act of this negotiation or communication is called the prosecution of the patent. Whatever occurs during that time that's recorded is called the prosecution history. It may also be referred to as the "file history" or the "file wrapper."

The fact that the Patent Office grants a patent does not necessarily mean that any invention claimed in the patent in fact deserves the protection of a patent. For example, the Patent Office may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do. No process is perfect.

Also, unlike the court proceeding, patent prosecution takes place without input from those who might later be accused of infringing a patent. For example, here Intel was not allowed to participate in the prosecution process or present any prior art to the patent examiner. That is why Intel in this case has the right to argue in front of you that a claimed invention in the patent is invalid, because it fails to meet the requirements for a patent.

It will then be your job as the jurors to consider the evidence that was presented by the parties and determine independently whether or not Intel has proven that the patent is invalid. The PTO, or Patent Office, does not consider or decide issues of infringement with respect to a patent.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), 2021-02-22 Trial Tr. 186:9-189:14 (with modifications).

### A.    VLSI Objections:

VLSI objects to any instruction as duplicative, confusing, and a waste of the Court's, parties, and jurors' time. Such an instruction is wholly duplicative of the information provided by the Federal

Judicial Center patent video (Proposed Jury Instruction No. 3), which both parties agree should be played for the jury.

Additionally, if the Court decides that such an instruction is warranted, VLSI objects to Intel's alteration to the instruction provided by this Court in the -057 case which Intel bases its proposal to include an unnecessary and unduly prejudicial instruction regarding Intel's non-participation in the prosecution process, as well as the lack of a determination of infringement by the PTO. For one, there is no insinuation that Intel did participate or that the PTO considers matters such as infringement. Intel's inclusion of such language serves only to confuse the jury and prejudice VLSI. This is further improper as Intel seeks to avoid mention of its IPR petitions (and suit against the PTAB).

VLSI also objects to Intel's removal of background information as to the examination process necessary to provide the jury with the context in which examinations are performed. Intel's selective presentation of the role of a patent examiner is highly misleading and ignores the significant efforts put in by the PTO.

Also, VLSI objects to Intel's alteration as legally improper and upending the presumption of validity. For example, the paragraph in Intel's proposal which begins with "[t]he fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent," implies that the issuance of a patent does not come with attendant protection. This is incorrect. A patent issued by the PTO is presumed valid. Intel must prove by a heightened clear and convincing burden that the patent is not deserving of protection.

Further, VLSI objects to Intel's proposed instruction as confusing and improper due to Intel's attempted amalgamation of instructions and numerous modifications to the instruction.

The version proposed by VLSI (should any instruction be given) follows the instruction given by this Court in the -057 case without additions.

- 11 -

**JURY INSTRUCTION NO. 5.     PATENT LITIGATION (AGREED)**

Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the claimed invention, as defined by the claims of the patent, within the United States before the term of the patent expires. A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, just like this one, in an effort to stop the alleged infringing acts or to recover damages, generally meaning money paid by the infringer to the patent owner to compensate for harm caused by the infringement.

The patent owner must prove infringement of at least one claim of the patent. The patent owner must also prove the amount of damages the patent owner is entitled to receive from the infringer as compensation for the infringing acts.

It is ultimately up to you and exclusively up to you to decide based on the law the factual question of whether the patent owner, in this case the plaintiff, has proven infringement of any valid patent claim.

A party accused of infringing a patent may deny infringement, and/or prove that the asserted claims of the patent are invalid. A patent when issued is presumed to be valid. In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), 2021-02-22 Trial Tr. 190:10-191:10 (with modifications); *see also* AIPLA Model Jury Instructions § II.1.2 (2019) (with modification); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), 2020-10-05 Trial Tr. (D.I. 389) 34:1-34:18 (with modifications).

**JURY INSTRUCTION NO. 6.    PARTY CONTENTIONS**

During the trial, the parties will offer the testimony of witnesses who will familiarize you with the technology that is in the VLSI Patents.

VLSI contends that Intel infringes claims of its patents by importing, making, using, offering to sell, or selling Intel products that are accused of infringement. The claims which VLSI contends that Intel infringes are:

- Claims 1, 2, 13, 15, 17, and 18 of the '187 Patent.
- Claims 9, 11, 16, 20, 21, and 36 of the '522 Patent; and

These claims may be collectively referred to as the "VLSI Patent claims" or the "asserted claims." Although the Court and parties may refer to the claims collectively, you must conduct your infringement analysis as to each claim individually.

VLSI must prove that Intel infringes one or more claims of the VLSI Patents by a preponderance of the evidence. That means that VLSI must show that it is more likely that Intel's products infringe than that they do not infringe.

The products accused of infringement are the following Intel products:

- Haswell Client and Server, Broadwell Client and Server, Skylake Server, Cascade Lake Server, and Ice Lake Client products for the '187 Patent.
- Skylake Server, Cascade Lake Server, and Ice Lake products for the '522 Patent; and

There are two ways in which a patent claim can be directly infringed. First, a claim can be literally infringed. VLSI asserts literal infringement for each of the '187 and '522 Patents. Second, a claim can be infringed under what is called the "doctrine of equivalents." VLSI asserts infringement under the doctrine of equivalents with respect to each of the '187 and '522 Patents.

To determine the question of infringement, you must compare the accused product or process with each claim of the VLSI Patents that VLSI asserts is infringed by that specific product or process.

- 13 -

A patent claim is literally infringed only if the accused Intel product or process includes each and every element in that patent claim. You must determine literal infringement with respect to each asserted patent claim individually. You heard that there is more than one claim asserted here—and more than one claim from each of the two asserted VLSI Patents.  Therefore, you have to determine for each of those claims whether or not it is infringed.  You have to do that for each individual claim.

A patent claim is infringed under the doctrine of equivalents if there is an equivalent component or process step in Intel's products or processes for each element of the patent claim that is not literally present in Intel's products or processes. VLSI must prove that it is more likely than not that Intel's products or methods contain the equivalent of each element of the claimed invention that is not literally present in the Intel accused products. An equivalent of an element is a component or method step that is only insubstantially different from the claimed element. One way of showing that an element is only insubstantially different is to prove that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused product or method.

VLSI further contends that Intel willfully infringes the claims of each of the '187 and '522 Patents. I will explain what that means in more detail before you deliberate.

Intel denies that it is infringing each of the claims of the asserted patents. Noninfringement is a defense to VLSI's allegations or assertions of infringement.

Intel also contends that the '187 and '522 Patents are invalid.

Invalidity of the asserted patent claims is a defense to infringement. Therefore, even though the Patent Examiner has allowed each of the VLSI Patent claims, you, the jury, must decide whether each claim of the VLSI Patents that is challenged by Intel is, in fact, invalid.

Intel carries the burden of proof. Intel must prove invalidity of each challenged claim by clear and convincing evidence in order to overcome the presumption of validity. A patent may be invalid for a number of reasons, including because it claims are obvious. To be entitled to patent protection an invention must be new and nonobvious. A patent will not be valid if it deprives people of the right to use what was known or obvious before the invention was made.

Intel contends that the asserted claims of each of the '187 and '522 Patents are obvious. A patent claim may be obvious only if all of the elements of a claim and the particular combination of such elements would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time, even if not described in a single piece of prior art. For obviousness, Intel must show, by clear and convincing evidence, that all of the elements of a claim and the particular combination of such elements, would have been obvious to a person of ordinary skill in the field.

Invalidity must be determined on a claim by claim basis.

Clear and convincing evidence means that it is highly probable that the fact is true. This standard is different from the standard that applies to other issues in this case, for example, infringement.

With infringement there is a lower standard of proof, namely, a preponderance of the evidence. It is fair for you to consider a preponderance of the evidence as meaning slightly greater than 50%. This is different from what you may have heard in criminal law or on shows about criminal law where the standard is "beyond a reasonable doubt." You may think of this "beyond a reasonable doubt" standard as approaching certainty, without reasonable doubt. The "clear and convincing" standard is between a preponderance on the one hand and beyond a reasonable doubt on the other. It is in the middle.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), 2021-02-22 Trial Tr. 191:11-195:17 (VLSI's version with modifications to address obviousness and remove anticipation; Intel's version with modifications); *see also* AIPLA Model Jury Instructions § II.2 (2019) (with

- 15 -

modifications); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), 2020-10-05 Trial Tr. (D.I. 389) 34:19-37:13 (with modifications).

      A.      **VLSI Objections:**

VLSI objects Intel's proposal as confusing and deviating from the model instructions (including by combining various instructions which result in duplicative and unduly prejudicial instructions by added emphasis on particular elements) and the Court's instruction in the -057 case.

VLSI objects to Intel's attempt to limit VLSI's assertions of infringement in a manner contrary to the allegations in this case, including under the doctrine of equivalents and willfulness. VLSI asserts infringement under the doctrine of equivalents and willfulness.

Further, VLSI objects to Intel's selective editing of the instruction, for example in removing the explanation of infringement under the doctrine of equivalents, which will serve only to confuse the jury, and which is contrary to both the model rule and instructions given by this Court. VLSI also objects to Intel's addition of duplicative instructions regarding validity, which have already been covered in prior instructions (based on AIPLA model instructions) and which Intel now attempts to re-include without regard to the prior instructions.

**JURY INSTRUCTION NO. 7.    OUTLINE OF TRIAL**

I am now going to tell you what you can expect during the course of the trial. First, the parties will make opening statements. An opening statement is not evidence. It is just going to be anticipating what the evidence will be.  It's simply argument.  It's an opportunity for the lawyers to explain what they anticipate the evidence will show.

It will be up to you to determine whether the evidence, that is the testimony of the witnesses and any documents that are admitted, support what the attorneys tell you in their opening statements.

After the opening statements, VLSI will present its evidence that the asserted claims of the '187 and '522 Patents have been infringed by Intel and that the infringement has been willful. After they conclude, then Intel will put on its case, if it chooses to, to present evidence that responds to VLSI's evidence of infringement and willfulness. I say "if it chooses to" because it is exclusively VLSI who has the burden and exclusive burden of proof in this case for infringement.

Intel may also then present evidence that the claims of the '187 and '522 Patents are invalid.  To do that, Intel will have to put on additional evidence because they have the burden of proof.

After Intel finishes, VLSI may then put on additional evidence, if it chooses to, responding to Intel's evidence that the claims of the '187 and '522 Patents are invalid, and to offer any additional evidence of infringement, willfulness, and damages. We call this "rebuttal" evidence. I say "if it chooses to" with respect to responding to Intel's claim of invalidity, because it is Intel who has the burden of proof for invalidity in this case. VLSI's "rebuttal" evidence may respond to any evidence offered by Intel.

Both parties may also choose to present evidence on damages or the amount of money, if any, VLSI is owed if any of the asserted claims of the VLSI Patents are found by you to be infringed and not invalid.

After the parties have finished offering evidence, the attorneys will make closing arguments, which are not evidence. Then I will give you final instructions on the law that applies to the case. Remember, just like the opening statements, the closing arguments are just argument. They are not evidence. After the closing arguments, I will release you and you will begin your deliberations.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), 2021-02-22 Trial Tr. 195:18-198:5 (with modifications); *see also* Federal Circuit Bar Association Model Jury Instructions § A.5 (2020) (with modifications); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), 2020-10-05 Trial Tr. (D.I. 389) 37:14-38:19 (with modifications).

### A.    VLSI Objections:

VLSI objects to Intel's modifications to the instruction, including by improperly insinuating that VLSI has some heightened burden in addition to the preponderance standard for infringement. For example, Intel adds the word "exclusive" with respect to VLSI and infringement, but not in relation to Intel and invalidity. Further Intel adds the confusing line that VLSI has the "burden and exclusive burden" of proof, which is both confusing and nonsensical.

VLSI also objects to Intel's removal of the willfulness, which VLSI asserts in this case, and its further attempt to alter the scope of rebuttal which is contrary to both the model instruction and this Court's practice in *MV3 v. Roku* and in the -057 case.

**JURY INSTRUCTION NO. 8.     EVIDENCE (AGREED)**

The evidence you are to consider consists of the following: witness testimony that will come primarily through the witness stand, but there's the possibility that you will also see some evidence presented to you by video.  There will also be evidence admitted by documents and exhibits.  There may be facts that the parties agree to or stipulate to, and of course, whatever reasonable conclusions you draw from the facts and circumstances that have been proven.  Nothing else is evidence.

There are two types of evidence. One is direct evidence, such as testimony of eyewitnesses. The other is indirect or circumstantial evidence, which is the type of evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, we make no distinction under the law between direct and circumstantial evidence. It simply requires that you determine the facts from all of the evidence that you hear in this case, whether direct, circumstantial or any combination.

In judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. That is why we have you here. It is entirely and exclusively up to you, listening to the evidence and reviewing the evidence that is received, to decide how much weight or credibility to give to any of it.

It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, if any, of a witness's testimony. It is entirely up to you what you choose to accept or reject.

For example, let me give you some ideas of what is not evidence. The statements and opening arguments by the lawyers are not evidence. During the examinations from that podium, the questions the lawyers ask are not evidence. If objections are made, those are not evidence. The attorneys that are seated in front of you may object if they believe that documents or testimony that

is attempted to be offered into evidence are improper under the rules of evidence.  I will rule on objections.

You should never be influenced by how I rule. If I sustain an objection, then just pretend the question was never asked. If there was an answer given, ignore it. On the other hand, if I overrule the objection, act like the objection was never made.

If I give you instructions that some item of evidence is received for a limited purpose, you must follow my instruction. If I give any limiting instruction during trial, I will clarify for you at the time what I mean. If I tell you that you should exclude or disregard something because it is not evidence, then you must disregard it and not consider it.

During the trial you may be shown charts and animations that will help to illustrate the testimony of witnesses. These are called demonstrative exhibits. They are not evidence unless I specifically admit them into evidence. What does that mean? If you hear a lawyer say: I'm using this for demonstrative purposes only, that's absolutely fine. But it means you're not going to have it when you're deliberating.

Anything you have heard outside of this courtroom, for example, anything you might know about VLSI or Intel that you brought in here with you, needs to be ignored. You are to decide the case solely on the evidence presented here in the courtroom and nothing else.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), 2021-02-22 Trial Tr. 198:6-202:3 (with modifications); *see also* Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 3.3 (with modifications); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), 2020-10-05 Trial Tr. (D.I. 389) 40:16-42:17 (with modifications).

**JURY INSTRUCTION NO. 9.    WITNESSES (AGREED)**

You alone determine the questions of credibility or truthfulness of the witnesses. How do you go about determining credibility? In weighing the testimony of witnesses, you can consider the witness's manner and demeanor on the witness stand. Do they have feelings or bias or interest in the case? Do they have some reason to be prejudiced that might affect their testimony? Is there consistency or inconsistency of their testimony when it's considered in light of all circumstances?

Has the witness been contradicted by other credible evidence? Have they made statements at other times that are contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in the outcome, you may accept the testimony if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified for the either side. You are to weigh the testimony, not the number of witnesses themselves. There's no test for relative number of witnesses. It is the relative convincing force of the evidence throughout the trial.

For example, the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testify to the contrary, if after you have considered all of the other evidence you choose to believe the single witness.

In determining the weight to give to the testimony of a witness, ask yourself: Did the witness say or do something or fail to say or do something that's at odds with the testimony given at trial?

A simple mistake by a witness does not necessarily mean that a witness did not tell the truth as he or she remembers it. We're people. We remember things inaccurately. If a witness has made

a misstatement, it is exclusively up to you to decide whether it was because it was an intentional falsehood or just a mistake.

The significance of that may depend on whether it has to do with something important or unimportant. But again, these are just guideposts.  It is entirely up to you to decide what weight, if any, to give to anyone.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), 2021-02-22 Trial Tr. 202:4-203:24 (with modifications); *see also* Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.11; *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), 2020-10-05 Trial Tr. (D.I. 389) 43:11-45:1 (with modifications).

**JURY INSTRUCTION NO. 10.   DEPOSITION TESTIMONY AND TESTIMONY BY VIDEO**

**[VLSI Proposed Instruction**:

The parties may present the testimony of a witness by having the testimony live for you, by videoconference, or by reading from the deposition transcript. They also may play a videotape of a witness's deposition testimony.

You will not see a witness or hear testimony from a witness where the witness is or was not under oath. So all of the testimony in that sense is of equal dignity because they were all sworn. It is entitled to the same consideration of any witness who appears at trial. In addition, some of the video recordings of witnesses you see may be of lower quality because the witnesses had their depositions taken from home. This was due to COVID-19 restrictions in place at the time and in the location where the witness was located. You should not hold the quality of the video, the location of the witness, or any other circumstances arising from COVID-19 restrictions against either party.

That being said, it is exclusively in your province to believe every word that any witness says, to disregard anything they say or do, whatever you want to do, because you all are the exclusive jurors and judges of the facts in this case.]

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), 2021-02-22 Trial Tr. 204:1-205:5 (with modifications); *see also MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), 2020-10-05 Trial Tr. (D.I. 389) 46:7-17 (with modifications).

**[Intel Proposed Instruction:**

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented,

under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers may be shown to you. This deposition testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court. In addition, some of the video recordings of witnesses  you  see may be of lower quality because the witnesses had their depositions taken from home. This was due to COVID-19 restrictions in place at the time and in the location where the witness was located.  You should not hold the quality of the video, the location of the witness, or any other circumstances arising from COVID-19 restrictions against either  party.]

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. No. 6:21-cv-00057 (W.D. Tex.) (Final Proposed Preliminary Instruction No. 9 (agreed instruction)).

     **A.**     **VLSI Objections:**

VLSI objects to Intel's attempt to alter the instruction as adopted by VLSI and as given by the Court in the -057 case.  The instruction proposed by VLSI (and as provided by the Court in the -057 case with minor modification for clarity) is more clear and less confusing to a jury as a preliminary instruction.  Further, it provides the instruction in prospective language ("The parties may present the testimony") rather than retrospective language ("Certain testimony has been presented") which is confusing as a preliminary instruction.

**JURY INSTRUCTION NO. 11.   EXPERT TESTIMONY**

[**VLSI Proposed Instruction**:

You are going to hear from what are known as expert witnesses. Expert testimony is testimony from a person who has developed a special skill or knowledge in some science, profession or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

You will get to weigh the expert's testimony just like you will consider any witness's testimony. You will consider the experts' qualifications, the basis and reason for their opinions, the reliability of the information that supports their opinions and factors I previously mentioned that would apply to weighing the testimony of all witnesses.

Expert testimony receives whatever weight and credit that you decide is appropriate, given all the other testimony and evidence in the case. Again, just like with any other witness, you are free to accept or reject the testimony of experts.]

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. No. 6:21-cv-00057 (W.D. Tex.) Trial Tr. 258:15-259:8 (minor modifications to clarify speech); *MV3 Partners, LLC v. Roku, Inc.*, 6:18-cv-00308-ADA (W.D. Tex.), 2020-10-05 Trial Tr. (D.I. 389) 45:2-17.

[**Intel Proposed Instruction:**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.]

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.) (Final Proposed Preliminary Instruction No. 10 (agreed instruction)); Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 3.5 (with modifications).

### A.    VLSI Objections:

VLSI does not believe that there is any reason to deviate from the Court's prior instructions in *MV3 v. Roku* or in the -057 case.

**JURY INSTRUCTION NO. 12.   STIPULATIONS OF FACT**

A "stipulation" is an agreement. When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

The party bearing the burden of proof regarding a stipulated fact does not need to prove that fact. It must be taken as a proven fact, and you cannot find against that fact. For example, if for the purposes of this case, the parties agree that it was sunny on January 1, 2020, you must consider that fact as true and proven even if evidence is presented demonstrating that it was cloudy and raining on January 1, 2020.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:19-cv-254-ADA (W.D. Tex.) (Final Proposed Preliminary Instruction No. 11); Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.3 (with modifications).

**A.      VLSI Objections:**

VLSI objects to Intel's modification to VLSI's proposed instruction which attempted to provide context to the instruction in a preliminary instruction. A stipulation is not an easily understood lay term, and VLSI's proposed language provides important context and explanation in more understandable language.  The additional portion is only two sentences long and is important in allowing for time savings for the Court, parties, and jury. For example, stipulations provide time saving benefits to the jury and the Court by outlining facts that are not in dispute and for which the jury need not waste energy deciding.

## JURY INSTRUCTION NO. 13.   BIAS—CORPORATE PARTY INVOLVED[3]

Do not let bias, prejudice, or sympathy play any part in your deliberations. Whether you are familiar with one party or the other should not play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:19-cv-254-ADA (W.D. Tex.) (Final Proposed Preliminary Instruction No. 12); Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.16.

**A.      VLSI Objections:**

VLSI objects to Intel's proposed instruction as unnecessary as both parties are corporate entities. Further, Intel's instruction seems to be intended to confuse the jurors into believing that VLSI is not a corporation.

---

[3] VLSI objects to the inclusion of this instruction in its entirety, including because both parties are corporations and as such it is unnecessary.

## JURY INSTRUCTION NO. 14.   NO INFERENCE FROM FILING SUIT[4]

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.  If a plaintiff files a frivolous suit, a defendant has numerous remedies to prevent it from ever coming to trial.  The defendant can file motions to dismiss, motions for summary judgment, attack the patents' validity before the PTO in what is known as an *inter partes review* proceeding.  Here, Intel filed multiple such motions and petitions, which were denied by the Court and the PTO as to every claim of each patent before you in this trial.

Further, the fact that Intel has raised arguments against the claims asserted creates no inference that Intel is entitled to a judgment. The act of making defensive arguments, by itself, does not in any way tend to establish that such arguments have merit and is not evidence.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:19-cv-254-ADA (W.D. Tex.) (Final Proposed Preliminary Instruction No. 13—VLSI did not and does not agree that any such instruction is appropriate); Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 3.6.

### A.     VLSI Objections:

VLSI objects to Intel's inclusion of this instruction as unduly prejudicial and misleading. Should the Court be inclined to include such an instruction, VLSI proposes the additional language in RED to provide the full context to the jury, including (1) VLSI's duty to investigate prior to filing suit and throughout the case prior to trial while maintaining the claims, and its compliance with such duty, (2) that Intel had the ability to and in fact did file motions to dismiss and motions for summary judgment

---

[4] VLSI objects to the inclusion of this instruction in its entirety, including because it improperly ignores that Intel filed numerous motions for summary judgment as well as failed IPRs.  However, if the Court is inclined to include such an instruction, VLSI proposes additional language above in RED. Intel objects to the additional language in red as incorrect and misleading.

as to some or all of the patents, and the fact that Intel's motions as to all assertions of infringement before the jury were denied demonstrating that a reasonable jury could find for VLSI. Similarly, should the Court be inclined to include such an instruction, VLSI proposes to include (3) that Intel's assertions of noninfringement and claims of invalidity, including in its filing of a cross-complaint do not in any way establish such defenses or claims. Such additional context would be necessary to mitigate against the undue prejudice of this unnecessary instruction.  Intel's objection to VLSI's additional language highlights that improper prejudice and misleading nature of the instruction as proposed by Intel.

## JURY INSTRUCTION NO. 15.   JUROR NOTEBOOKS[5]

To assist in your deliberations, I have provided you with a notebook that contains the following:

- Paper
- A copy of each of the '187 and '522 Patents
- Witness photographs, which will be provided after the witness testifies

These materials have been jointly submitted by the parties. Please refer to these materials to assist you during trial.

***Source***: *VLSI Technology LLC v. Intel Corp.*, No. 6:19-cv-254-ADA (W.D. Tex.) (Final Proposed Preliminary Instruction No. 14 (with modifications)); *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex.), 2018-06-11 Trial Tr. (D.I. 488) 26:12-27:2 (with modifications).

### A.   VLSI Objections:

VLSI objects to an instruction on juror notebooks or the inclusion of notebooks in the form proposed by Intel as likely to create confusion for the jury, by distracting the jury from its task and inviting error from "witness counting."

---

[5] VLSI objects to the inclusion of this instruction in its entirety as unhelpful and confusing to the jury.

## <u>FINAL JURY INSTRUCTIONS</u>

**JURY INSTRUCTION NO. 16.   JURY CHARGE (AGREED)**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

Each of you is going to have your own printed copy of these final jury instructions that I am giving you now, so there is really no need for you to take notes unless you want to.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for VLSI or Intel in arriving at your verdict.

After the remainder of these instructions, you will hear closing arguments from the attorneys. Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it.

Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 1; *see also* Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 3.1 (with modifications); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), D.I. 379, 1-2 (with modifications).

**JURY INSTRUCTION NO. 17.   SUMMARY OF PATENT ISSUES**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following four main issues:

(1)   Whether VLSI has proven by a preponderance of the evidence that any of the following claims are infringed, by Intel:

- Claims 1, 2, 13, 15, 17, and 18 of the '187 Patent by the Haswell Client and Server, Broadwell Client and Server, Skylake Server, Cascade Lake Server, and Ice Lake Client products.

- Claims 9, 11, 16, 20, 21, and 36 of the '522 Patent by the Skylake Server, Cascade Lake Server, and Ice Lake products; and

Patent infringement is determined on a claim-by-claim basis. You may find that one claim of a patent is infringed, while other claims of the same patent are not infringed.

(2)   Whether VLSI has proven by a preponderance of the evidence that Intel's infringement of any of the claims was willful.

(3)   Whether Intel has proven by clear and convincing evidence that any of the following claims are invalid:

- Claims 1, 2, 13, 15, 17, and 18 of the '187 Patent.

- Claims 9, 11, 16, 20, 21, and 36 of the '522 Patent; and

Patent invalidity is determined on a claim-by-claim basis. You may find that one claim of a patent is invalid, while other claims of the same patent are not invalid.

(4)   If any claims of any patent are infringed and not invalid, What amount of damages, if any, VLSI has proven by a preponderance of the evidence for infringement of those claims.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 2 (with modifications); *see also* AIPLA Model Jury Instructions § V.1 (2019) (with modifications).

**A.     VLSI Objections:**

VLSI objects to Intel's asserted additional language of "infringed" and "valid"—which are already included in the instruction in their respective locations—into the portion of the instruction

regarding damages as an improper, unnecessary, and highly prejudicial. Intel's assertion that such an instruction is necessary is contrary to its repeated arguments against other proposed instructions which it alleges are redundant as to why redundant instructions should not be given.

Further, VLSI objects to Intel's use of the language "if any *claims* of any patents are infringed and not invalid, what amount of damages..." as suggesting that damages are only available if more than one claim is found infringed and not invalid. This is contrary to black letter law. A patentee is entitled to damages as to any infringement of any claim.

VLSI additional objects to Intel's attempted removal of its assertion of willful infringement, an assertion that VLSI has made in this case.

**JURY INSTRUCTION NO. 18.   EVIDENCE**

The evidence you are to consider consists of the testimony of the witnesses, the documents and exhibits that I admitted into evidence, and any facts the lawyers agreed or stipulated to. You are to apply any fair inferences and reasonable conclusions you draw from the facts and circumstances that you believe have been proven. Nothing else is evidence.

As a reminder, here are some examples of what is not evidence. [The fact that VLSI filed a lawsuit is not evidence that it is entitled to a judgment. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.  Likewise, the fact that Intel has raised arguments against the claims asserted is not evidence that Intel is entitled to a judgment. The act of making defensive arguments, by itself, does not in any way tend to establish that such arguments have merit and is not evidence.][6]

The statements, arguments, and questions by the attorneys are not evidence. Objections to questions are not evidence. The attorneys that are seated in front of you may object if they believe that documents or testimony that is attempted to be offered into evidence are improper under the rules of evidence.

During the trial I may not have let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. Further, sometimes I may have ordered you to disregard things that you saw or heard, or struck things from the record. You must follow my rulings and completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

---

[6] VLSI does not agree that this is an appropriate inclusion in the instruction.  VLSI proposes responsive language should Intel's language be included in the instruction.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of eyewitnesses. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence. It simply requires that you determine the facts from all of the evidence that you hear in this case, whether direct, circumstantial or any combination.

As I instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

You should never be influenced by my ruling on any objection. If I sustained an objection, then just pretend the question was never asked. If there was an answer given, ignore it. If I overruled the objection, act like the objection was never made. If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction. If I gave any limiting instruction during trial, you must follow it. Any testimony I tell you to exclude or disregard is not evidence, may not be considered.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence as I have defined it here, and nothing else.

[If relevant depending on the Court's rulings: Some evidence was admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.]

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 3 (including portions in RED and BLUE); *see also* Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 3.3 (with modifications); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), D.I. 379, 2-4 (with modifications).

### A. VLSI Objections:

VLSI objects to Intel's modification of this instruction to include what is not evidence and selectively injecting that VLSI's filing of the lawsuit is not evidence. In particular, this selective identification would appear to a lay jury as the Court seeming to endorse the idea that VLSI's suit was somehow improper or unfounded, and is unduly prejudicial and ignores the numerous other elements in this case, for example, that Intel asserts invalidity or any of Intel's other alleged defenses are similarly not evidence.  VLSI proposes responsive language should Intel's proposed language be adopted to put the issue into context.  Intel's objection to this responsive language demonstrates the inappropriateness and prejudice of Intel's proposed addition.

## JURY INSTRUCTION NO. 19.   LIMITING INSTRUCTIONS[7]

[If relevant depending on the Court's rulings: You have heard certain arguments and evidence regarding Intel's patents. The fact that Intel has patents does not mean that it has a right to use VLSI's patented technology and has no impact on whether Intel has or has not infringed the asserted patents.]

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 4.

### A.      VLSI Objections:

VLSI proposes this instruction should Intel attempt to introduce its patents at trial.   Intel's objections to this instruction are without merit.   Intel should not be allowed to introduce extraneous, confusing information and avoid clarification by the Court.

---

[7] Intel objects to this instruction in its entirety.

**JURY INSTRUCTION NO. 20.   CHARTS AND SUMMARIES (AGREED)**

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts unless I specifically admit a chart or summary into evidence. You should determine the facts from the evidence.

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 5; *see also* Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.7 (with modifications).

**JURY INSTRUCTION NO. 21.   DEMONSTRATIVE EXHIBITS (AGREED)**

Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence. It is a party's description, picture, or model used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 6; *see also* Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.8 (with modifications).

**JURY INSTRUCTION NO. 22.   WITNESSES (AGREED)**

You alone determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, any prejudice or bias about the case, and the consistency or inconsistency of the witness's testimony considered in the light of circumstances.

Has the witness been contradicted by other credible evidence? Has the witness made statements at other times that are contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in the outcome, you may accept the testimony if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified for the opposing sides. Witness testimony is weighed. Witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testify to the contrary, if after you have considered all of the other evidence you choose to believe the single witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some time the witness said or did something or failed to say or do something that was at odds with the testimony given at trial. A simple mistake by a witness does not necessarily mean that a witness did not tell the truth as he or she remembers it. We're people. We forget things. We remember things inaccurately. If a witness has made a misstatement, consider whether that was an intentional falsehood or simply an innocent mistake.   The significance of that may depend on

whether it has to do with something important or unimportant. But again, this is exclusively in your province of whether or not you believe a witness is telling the truth.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 7 (with modifications); *see also* Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, §§ 3.4, 2.11; *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), 2020-10-05 Trial Tr. (D.I. 389) 43:11-45:1 (with modifications).

**JURY INSTRUCTION NO. 23.   DEPOSITION TESTIMONY (AGREED)**

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers may be shown to you. This deposition testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court. In addition, some of the video recordings of witnesses you see may be of lower quality because the witnesses had their depositions taken from home. This was due to COVID-19 restrictions in place at the time and in the location where the witness was located. You should not hold the quality of the video, the location of the witness, or any other circumstances arising from COVID-19 restrictions against either party.

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 8; *see also* Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.13 (with modifications).

- 44 -

**JURY INSTRUCTION NO. 24.   EXPERT TESTIMONY (AGREED)**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

***Source***: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 9; *see also MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), D.I. 379, 6.

**JURY INSTRUCTION NO. 25.   STIPULATIONS OF FACT (AGREED)**

A "stipulation" is an agreement. When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

█████████████████████████████████████████████████████████████████████████

██████████████████████████████████ and any other stipulations should they not separately be provided to the jury just before or after the reading of the jury instructions.]

***Source***: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 10; *see also* Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.3 (with modifications).

## JURY INSTRUCTION NO. 26.   BIAS-CORPORATE PARTY INVOLVED[8]

Do not let bias, prejudice, or sympathy play any part in your deliberations. Whether you are familiar with one party or the other should not play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 11; Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.16 (without modifications).

### A.      VLSI Objections:

VLSI objects to Intel's proposed instruction as unnecessary as both parties are corporate entities. Further, Intel's instruction seems to be intended to confuse the jurors into believing that VLSI is not a corporation.

---

[8] VLSI objects to the inclusion of this instruction in its entirety, including because both parties are corporations and as such it is unnecessary.

**JURY INSTRUCTION NO. 27.   BURDEN OF PROOF GENERALLY (AGREED)**

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on VLSI for some issues and on Intel for other issues. There are two burdens of proof that you will apply in this case. One is the preponderance of the evidence, and the other is clear and convincing evidence.

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 12; *see also MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), D.I. 379, 9-10 (with modifications).

**JURY INSTRUCTION NO. 28.   PREPONDERANCE OF THE EVIDENCE**

<span style="color:red">The burden of proof applicable to VLSI in this case is known as the preponderance of evidence.</span> VLSI has the burden of proving patent infringement by a preponderance of the evidence. VLSI further has the burden of proving willful patent infringement by a preponderance of the evidence. VLSI further has the burden of proving damages for any alleged patent infringement by a preponderance of the evidence.

A preponderance of the evidence means to prove something is more likely so than not—i.e. evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony. You may think of this preponderance of the evidence standard as slightly greater than 50%.

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 13 (RED above in original); *see also* Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 3.2; *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), D.I. 379, 9-10 (with modifications).

    **A.**     **VLSI Objections:**

Intel's objections to this instruction are without merit.  VLSI's proposed language is exactly as used by this Court in the -057 case and a correct statement of law meant to help clarify the issues for the jury: namely what standard of proof to apply.

**JURY INSTRUCTION NO. 29.   CLEAR AND CONVINCING EVIDENCE (AGREED)**

Intel has the burden of proving patent invalidity by clear and convincing evidence. Intel also has the burden of proving that an alleged product or publication is prior art by clear and convincing evidence.

Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established. It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy. This standard is different from the preponderance of the evidence standard which applies to VLSI's burden of proving infringement.

These standards are different from what you may have learned about in criminal proceedings where a fact is proven beyond a reasonable doubt. On a scale of the various standards of proof, as you move from the preponderance of the evidence, where the proof need only be sufficient to tip the scales in favor of the party proving the fact, to at the other end beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between those two standards.

[VLSI does not have any burden of proof on the issue of patent validity or prior art.]

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 14 (with modifications); *see also* Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.17 (with modifications); *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex.), 2018-06-15 Trial Tr. (D.I. 498) 36:2-37:9.

**JURY INSTRUCTION NO. 30.   NATURE OF THE ACTION AND CONTENTIONS OF THE PARTIES**

As I did at the start of the case, I will now give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to prevail on each of its contentions.

VLSI is the owner of the two patents at issue in this case. These patents are:

- United States Patent No. 6,633,187 (which may be called the "'187 Patent").
- United States Patent No. 6,366,522 (which may be called the "'522 Patent"), and

These patents collectively have also been referred to as the "VLSI Patents" or the "asserted patents."

VLSI contends that Intel infringes:

- Claims 1, 2, 13, 15, 17, and 18 of the '187 Patent.
- Claims 9, 11, 16, 20, 21, and 36 of the '522 Patent; and

These claims may also be referred to as the "VLSI Patent claims" or the "asserted claims."

VLSI contends that Intel directly infringes the asserted claims by importing, making, using, offering to sell, or selling certain microprocessor products. The names of these Intel products by code names and by patent are:

- Haswell Client and Server, Broadwell Client and Server, Skylake Server, Cascade Lake Server, and Ice Lake Client products for the '187 Patent.
- Skylake Server, Cascade Lake Server, and Ice Lake products for the '522 Patent; and

There are two ways in which a patent claim can be directly infringed. First, a claim can be literally infringed. Second, a claim can be infringed under what is called the "doctrine of equivalents." To determine infringement, you must compare the accused products with each claim from the VLSI Patents that VLSI asserts is infringed under the doctrine of equivalents.

- 51 -

Additionally, VLSI alleges that Intel willfully infringed each of the '187 and '522 Patents.

VLSI further contends that it is entitled to recover damages for Intel's infringement.

Intel denies that it infringes any asserted claim of the asserted patents. Non-infringement is a defense to a charge of infringement.

Intel also contends that it has not willfully infringed any asserted claim of the asserted patents.

In addition, Intel contends that the asserted claims of the asserted patents are invalid. Invalidity is a defense to infringement.

Intel contends that VLSI is not entitled to damages.

Although the Court and parties may refer to the claims collectively, you must conduct your invalidity analysis as to each claim individually.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 15 (with modifications); *see also* AIPLA Model Jury Instructions § II.2 (2019) (with modifications); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), 2020-10-05 Trial Tr. (D.I. 389) 34:19-37:13 (with modifications).

### A.     VLSI Objections:

VLSI objects to Intel's modification of its proposed instruction, including by removing the doctrine of equivalents (and its explanation) and willfulness. This is factually inaccurate as VLSI has asserted and continues to assert direct infringement both literally and under the doctrine of equivalents, as well as willfulness.

Intel cannot alter the scope of VLSI's assertions of infringement simply because it disagrees with those assertions.

- 52 -

**JURY INSTRUCTION NO. 31.   OVERVIEW OF APPLICABLE LAW**[9]

As I noted previously, you will be asked to decide whether Intel has infringed the claims of the VLSI Patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. There are a few ways that a patent may be infringed. I will explain the requirements for infringement to you in these jury instructions. In general, however, a patent claim may be directly infringed when a party makes, uses, sells, or offers for sale in the United States, or imports into the United States, a product meeting all the requirements of the patent claim, or uses within the United States a method that meets all the requirements of the patent claim.



you must

For a claim to be infringed, VLSI must show, by a preponderance of the evidence, that Intel itself makes, uses, sells, offers for sale, or imports a product meeting all the requirements of the patent claim, or uses a method that meets all the requirements of a patent claim.

Another issue you will be asked to decide is whether the asserted claims of the asserted patents are invalid. A patent claim may be invalid for a number of reasons, including because it

---

[9] Intel objects to this instruction in its entirety.  If it is included, Intel proposes the additions in blue and objects to the language in red.

[10] See ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. VLSI reserves all rights.

claims subject matter that is not new or would have been obvious. A patent, once issued, comes with the presumption of validity.  Nevertheless, an alleged infringer may attempt to prove that a claim [may be] [is] invalid because it would have been obvious. This must be proven by the alleged infringer by clear and convincing evidence. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether the claims in the asserted patents are obvious. I will provide you detailed instructions on these questions.

*Source*: *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), D.I. 379, 10-11 (with modifications); Federal Circuit Bar Association Model Jury Instructions § A.4 (2020) (with modifications).

### A.  VLSI Objections:

VLSI objects to Intel's modification of its proposed instruction as removing highly relevant and clarifying instructions. For example, Intel includes language of the territoriality requirements for infringement, but fails to provide the clarifying instruction to the jury that it need not worry about determining territoriality because of an agreement between the parties. This serves only to promote confusion and legal error.

VLSI also objects to Intel's improper presentation of the law as ignoring that there are multiple forms of asserted infringement.  VLSI further objects to Intel's attempted removal of the words "by the alleged infringer" in relation to the burden of proof on invalidity.  Intel's attempted removal is an improper attempt to shift the burden of validity onto VLSI.  This is improper.

**JURY INSTRUCTION NO. 32.   PATENTS—THE ROLE OF THE CLAIMS OF A PATENT AND WHAT IT COVERS**

Before you can decide many of the issues in this case, you'll need to understand the role of the patent claims.

The claims of a patent are the numbered sentences at the end of the patent. The claims define the patent owner's rights under the law. The claims are important, because it is the words of the claims themselves that define what the patent covers. The figures and the text in the rest of the patent provide a description or examples of the claimed invention, and they provide a context for the claims; but it is the claims that define the breadth of the patent's coverage.

Each claim is effectively treated as if it were its own separate patent, and each claim may cover more or may cover less than any other claim. Therefore, what a patent covers collectively or as a whole depends on what each of its claims cover.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not the claim is invalid.

You are to use the plain and ordinary meaning of the words of the patent claims as understood by a person of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the alleged invention. The meanings of the words of the patent claims must be the same when deciding both the issues of infringement and validity.

I'll now explain how a claim defines what it covers. A claim sets forth in words a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or method satisfies each of these requirements in that sentence, then it is covered by and infringes the claim. There can be several claims in a patent. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product or method meets all the requirements of a claim, where it meets all of its limitations or all of its elements, the claim is said to cover that product or method; and that product or method is said to fall within the scope of that claim. In other words, a claim covers a product or method where each of the claim elements or limitations is present in that product or method. If a product or method is missing even one limitation or element of a claim, the product or method is not covered by that claim. If the product or method is not covered by the claim, the product or method does not infringe the claim.

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 16 (with modifications); *see also KAIST IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex.), 2018-06-15 Trial Tr. (D.I. 498) 40:1-41:20 (with modifications).

## A.     VLSI Objections:

VLSI objects to Intel's addition of the word "alleged" before invention as an improper modification and an improper burden shifting. Patents are presumed valid and inventive. Intel may (as it has) argue invalidity in the instructions relating to invalidity.

**JURY INSTRUCTION NO. 33.   INDEPENDENT AND DEPENDENT CLAIMS (AGREED)**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, the following claims are independent claims:

- Claims 1 and 13 of the '187 Patent.
- Claims 9 and 16 of the '552 Patent; and

The remainder of the asserted claims in the VLSI Patents are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim. If any requirement of the dependent claim is not met, or if any requirement of the independent claim from which the dependent claim depends is not met, then the product or process does not infringe that dependent claim. On the other hand, if the requirements of an independent claim are all met, but a requirement of a dependent claim is not met, the independent claim is still infringed. In this case, the following claims are dependent claims:

- Claims 2, 15, 17, and 18 of the '187 Patent.
- Claims 11, 20, 21, and 36 of the '552 Patent; and

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 17; *see also* Federal Circuit Bar Association Model Jury Instructions § B.2.1a (2020) (with modification to reflect adopted Intel changes only).

**JURY INSTRUCTION NO. 34.   "COMPRISES" CLAIMS**

The preambles to each of the asserted claims of the VLSI Patents use the word "comprises," for example in the phrases "a method comprises," "the apparatus comprises," or "[t]he stand-alone IC comprises." The word "comprises" means "including the following but not excluding others." A claim that includes the word "comprises" is not limited to products or methods having only the elements recited in the claim, but also covers products or methods that add additional elements.

For example, a claim wherein "a table comprises a tabletop, legs, and glue" would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

If you find that Intel's products or methods include all of the elements in a claim, literally or under the doctrine of equivalents where applicable, even if Intel's products or methods include additional components or steps, you must find that Intel's products or methods infringe the claim.

But if a product or method is missing even one limitation or element of a patent claim, then that product or method is not covered by the claim and does not infringe. Likewise, if a prior art reference is missing one limitation or element of a patent claim, then that prior art reference does not invalidate the claim. For example, a claim wherein "a table comprises a tabletop, legs, and glue" would not cover a table that includes a tabletop and legs, but no glue.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 18 (VLSI's proposal includes only slight modification from comprising to comprises, RED language was included; Intel's BLUE paragraph is a modification); *see also* AIPLA Model Jury Instructions § V.3.6 (2019) (with modifications); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), D.I. 379 (with modifications).

### A.      VLSI Objections:

VLSI objects to Intel's modification of the instruction as given by this Court in the -057 case as unnecessary and highly confusing.

For example, after introducing the "comprising" limitation and explanation that comprising may include more than the enumerated elements, Intel adds a confusing paragraph that begins: "[b]ut if a product or method is missing even one limitation or element of a patent claim, then that product or method is not covered by the claim and does not infringe. Likewise, if a prior art reference is missing one limitation or element of a patent claim, then that prior art reference does not invalidate the claim." This is confusing and it is unclear how it provides clarity on the "comprising" limitation. To the extent such an addition is intended only to restate the general rule of patent infringement, such an addition is not necessary as duplicative of the infringement instruction, which requires that a product or method include all elements of a claim to be infringed.

Additionally, VLSI objects to Intel's reference to invalidity as confusing, improper, and duplicative (as potentially relevant) of other instructions. It seems to suggest that the infringing products can be invalidating (which they cannot, and Intel is not asserting otherwise in this litigation).

VLSI also objects to Intel's removal of references to infringement under the doctrine or equivalents (as Intel does throughout the instructions) simply because it believes that such infringement should not be in the case.  This is improper and contrary to the Court's ruling on Intel's Dabuert motion. Intel cannot unilaterally change the scope of the types of infringement at issue.

**JURY INSTRUCTION NO. 35.   TERMS "A" OR "AN;" AND "THE"**[11]

The use of the terms "a" or "an" in a claim is a term of art, which has a special meaning in the context of a patent claim. When used in a claim, standing alone, the terms "a" or "an" means "one or more." However, a patentee may evince a clear intent that limits "a" or "an" to "one."

["The subsequent use of definite article "the" or "said" in a claim to refer back to the same claim term does not change the general plural rule" and similarly refers to "one or more."] / [The use of the term "the" in a claim is also a term of art. When used in a claim, the term "the" means "only one."]

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 19 (VLSI proposal has no modification to "a" or "an", BLUE are all modifications to "a" and "an"; both parties modified to add a "the" instruction); *Baldwin Graphics Sys., Inc. v. Seibert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008).

A.      **VLSI Objections:**

VLSI objects to Intel's misrepresentation of the law with respect to the words "a" and "an," as legally improper and confusing. Intel appears to argue that the terms "a" or "an" mean "one or more" *only* when such a term is "standing alone." This is contrary to Federal Circuit case law, which clearly holds that subsequent references to a term initially introduced by "a" or "an" reinvokes the meaning "one or more." Additionally, Intel's general assertion that "a patentee may evidence a clear intent" that "a" or "an" refers to only "one" is contrary to any facts in this case and would improperly mislead the jury. As described by the Federal Circuit, "[t]hat 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention. The exceptions to this rule are

---

[11] Intel objects to this instruction being given.  Unlike in the -254 case, there is not a dispute between the parties related to these terms.  This instruction is therefore unnecessary and will be confusing to the jury.  To the extent an instruction regarding "a" or "an" or "the" is deemed necessary, Intel proposes the text in black and blue, and not the text in red.

***extremely limited***: a patentee must 'evince[] a clear intent' to limit 'a' or 'an' to 'one.'" *Baldwin Graphics Sys., Inc. v. Seibert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008).  This is also contrary to the Court's instruction in the -057 case where Intel raised the same issue.

VLSI further objects to Intel's misrepresentation of the law with respect to the word "the," which simply harkens back to the antecedent one or more. The case to which Intel cites does not hold differently, but Intel misinterprets its holding. As the court in *Baldwin Graphics* explained, "[t]hat 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention. . . . The subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning. . . . [T]he use of a definite article ('said' or 'the') to refer back to an initial indefinite article does not implicate, let alone mandate the singular. Because the initial indefinite article ('a') carries either a singular or plural meaning, any later reference to that same claim element merely reflects the same potential plurality." 51 F.3d 1342-43.

**JURY INSTRUCTION NO. 36.   "REGULATING" TERM**[12]

**[VLSI Proposed Instruction:**

The law says that it is the Court's role to define the terms of the claims and it is your role as the jury to apply the Court's definitions of the terms the Court has construed to the issues that you are asked to decide in this case.

I have determined the meaning of the phrase "regulate/regulating at least one supply from a power source and an inductance" as used in the '522 Patent.  The term "regulate/regulating at least one supply from a power source and an inductance" is to be given its plain and ordinary meaning, and would allow both boost converters and buck converters.

You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.]

*Source*: Federal Circuit Bar Association Model Jury Instructions § B.2.1 (2020) (with modifications); *VLSI Technology LLC v. Intel Corp.*, D.I. 101 (Claim Construction Order); Claim Construction Hrg. Tr. 50:22-51:2 ("The Court is going to find that there was no clear and unequivocal disavowal. We rely in great part on what counsel has said with the allowance of Claim 23 and we find that it would allow both a boost and a buck converter; therefore, the claim construction for the first term is going to be plain and ordinary meaning.").

**[Intel Proposed Instruction:**

---

[12] At claim construction, Intel proposed a specific construction for the "regulating" claim terms of the '522 patent, and the Court held that plain and ordinary meaning applies.  Intel re-asserts its proposed construction (including to preserve its appellate rights).  But to the extent that the Court elects not to modify its claim construction determination, no instruction should be given.

The claim term "regulate/regulating at least one supply from a power source and an inductance" means "regulate/regulating at least one supply from an inductance connected to a power source, where the inductance is positioned between the power source and the regulating circuitry."] [13]

***Source***: Intel's Opening Claim Construction Brief, D.I. 82 at 3-7; Intel's Responsive Claim Construction Brief, D.I. 84 at 1-4.

### A.  VLSI Objections:

VLSI objects to Intel's proposed instruction as contrary to the Court's claim construction order and an improper attempt to reargue failed claim construction positions.  VLSI's instruction, in contrast, is faithful to the Court's order and construction.

Intel argues that either its reasserted (failed) construction should be given as an instruction, or no instruction should be given.  This position is without support.  If Intel believes an instruction should be given (if it gets the construction it wants—despite already losing on the issue), it should not be allowed to argue against providing the proper claim construction to the jury.  Further, it is proper and necessary to provide claim constructions to the jury to allow the jury to properly decide the case based on the law—including the constructions—provided by the Court.

---

[13] This is the construction that Intel proposed and that the Court rejected at the claim construction phase.  To preserve its rights appellate rights, Intel re-asserts its proposed construction for the reasons it previously advanced in its claim construction briefing and at oral argument.

**JURY INSTRUCTION NO. 37.   INFRINGEMENT—GENERALLY**

I will now instruct you as to the rules you must follow when deciding whether VLSI has proven that Intel infringed any of the claims of the '187 and '522 Patents.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling within the United States a product claimed in the patent, or performing within the United States a method claimed in the patent during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, VLSI alleges that Intel infringes the following claims through its accused products:

- Claims 1, 2, 13, 15, 17, and 18 of the '187.
- Claims 9, 11, 16, 20, 21, and 36 of the '522 Patent; and

In determining infringement, you must compare Intel's accused products and methods to the asserted claims of the '187 and '522 Patents when making your decision regarding infringement.

As explained further in the following Instructions, direct infringement results if the defendant makes, uses, sells, or offers to sell a product or method that infringes a claim, either literally or under the doctrine of equivalents. There is no intent element to direct infringement.

VLSI has accused Intel of direct infringement.

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 20 (with modifications); *see also* AIPLA Model Jury Instructions § V.3.0 (2019) (with modification to correct legal mistake); *Intel Corp. v. United States ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991) ("As noted by Intel, there is no intent element to direct infringement.").

**A.   VLSI Objections:**

VLSI objects to Intel's removal of relevant instruction—namely what infringement is relevant in this case and that VLSI has accused Intel of infringement.  There is no basis for Intel's objections to this instruction.

VLSI does not object to the word "asserted."

**JURY INSTRUCTION NO. 38.   DIRECT INFRINGEMENT—KNOWLEDGE OF THE PATENT AND INFRINGEMENT ARE IMMATERIAL**

In this case, VLSI asserts that Intel has directly infringed each of the VLSI Patents. Intel is liable for directly infringing each asserted claims of the VLSI Patents if you find that VLSI has proven that it is more likely than not that Intel made, used, imported, offered to sell, or sold the invention defined in at least one claim of the patent within the United States a device recited in the claim or performed in the United States a method recited in at least one claim.

A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement.  There is no intent element to direct infringement. Evidence of independent development is not relevant to an infringement determination.  Even if the party independently creates the accused product or method, it can still infringe.

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 21 (with modifications); *Intel Corp. v. United States ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991) ("As noted by Intel, there is no intent element to direct infringement.").

**A.      VLSI Objections:**

VLSI objects to Intel's alteration of this instruction.  The model instruction refers to this instruction as "DIRECT INFRINGEMENT—KNOWLEDGE OF THE PATENT AND INFRINGEMENT ARE IMMATERIAL," as offered by VLSI.

Further, there is no basis for Intel's removal of the language regarding the intent requirement, or independent creation.  Intel has made clear that it intends to argue a defense of "independent creation" to the jury, but this is contrary to law, including as noted **by Intel** before the Federal Circuit "there is no intent element to direct infringement."

**JURY INSTRUCTION NO. 39.   DIRECT INFRINGEMENT—LITERAL INFRINGEMENT**

There are two types of infringement: (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." I will now instruct you on literal infringement, and then will provide an instruction on infringement under the doctrine of equivalents.

In order to prove literal infringement of a patent claim, VLSI must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Intel made, used, sold, offered for sale within, or imported into the United States a product or process that meets all of the requirements of a claim and did so without VLSI's permission. You must compare the product or process with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met. A claim element is literally present if it exists in the accused product or was performed by the accused method as it is described in the claim language. If an accused product does not possess any one element recited in a claim, then you must find that that particular product does not literally infringe that claim.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product or method meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. This is because a dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own. Intent to infringe is not an element of direct literal infringement.

***Source***: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 22; *see also* Federal Circuit Bar Association Model Jury Instructions § B.3.1a (2020) (with modifications); *Intel*

*Corp. v. United States ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991) ("As noted by Intel, there is no intent element to direct infringement.").

### A.      VLSI Objections:

VLSI objects to Intel's modification of the instruction, including by removing that there are two methods of direct infringement which is necessary to provide context to this instruction.  Intel's attempt to confuse the jury is further compounded by its additional proposed language which is either unnecessary and confusing (because it already states that every element must be present), or highly prejudicial and confusing as seeming to conflate direct and literal infringement.

Further, there is no basis for Intel's removal of the language regarding the intent requirement. Intel has made clear that it intends to argue a defense of "independent creation" to the jury or lack of intent, but this is contrary to law, including as noted ***by Intel*** before the Federal Circuit "there is no intent element to direct infringement."

**JURY INSTRUCTION NO. 40.   DIRECT INFRINGEMENT—DOCTRINE OF EQUIVALENTS[14]**

If a company makes, uses, sells, offers to sell within, or imports into the United States a product or process that does not literally meet all of the limitations of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product or process satisfies the claim limitations "under the doctrine of equivalents."

Under the doctrine of equivalents, a product or process infringes a claim if the accused product or process contains elements or performs steps that literally meet or are equivalent to each and every limitation of the claim.

You may find that a limitation or step is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial." [You may find that an element or step is equivalent to an element of a claim that is not met literally if] [that is, that] the element or step: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the limitation of the claim.

In order to prove infringement by "equivalents," VLSI must prove the equivalency of the element or step to the claim limitation. Thus, each element of a claim must be met by the accused product or process either literally or under the doctrine of equivalents for you to find infringement. VLSI must prove infringement by a preponderance of the evidence. As with literal infringement, intent to infringe is not an element of direct infringement under the doctrine of equivalents.

---

[14] Intel objects to this instruction in its entirety.  VLSI does not maintain a claim for infringement under the doctrine of equivalents for the '187 and '522 patents, and Intel has moved for to exclude VLSI's expert's attempt to reserve the right to opine on the doctrine of equivalents with respect to the '187 and '522 Patents.  Dkt. 268.  Thus, Intel believes that an instruction regarding the doctrine of equivalents—as well as any mention of doctrine of equivalents in these instructions—is inappropriate. To the extent Intel's motion is denied, Intel proposes the instructions herein.

Known interchangeability of the claim limitation and the proposed equivalent is a factor that can support a finding of infringement under the doctrine of equivalents. In order for the element or step to be considered interchangeable, the claim element must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient.

VLSI contends that if you find Intel does not infringe the asserted claims of the '187 and '522 Patents literally, then Intel infringes the asserted claims of the '187 and '522 Patents under the doctrine of equivalents.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 23 (with modifications); *see also* Federal Circuit Bar Association Model Jury Instructions, § B.3.1c (2020); *Intel Corp. v. United States ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991) ("As noted by Intel, there is no intent element to direct infringement.").

### A.     VLSI Objections:

VLSI objects to Intel's proposed alteration of the Court's language to instead read "that is, if" as confusing and legally improper.

Further, there is no basis for Intel's removal of the language regarding the intent requirement. Intel has made clear that it intends to argue a defense of "independent creation" to the jury or lack of intent, but this is contrary to law, including as noted ***by Intel*** before the Federal Circuit "there is no intent element to direct infringement."

## JURY INSTRUCTION NO. 41.   LEVEL OF ORDINARY SKILL[15]

A person of ordinary skill in the art for the VLSI Patents would have had a Bachelor's Degree in Electrical Engineering, Computer Engineering, or Computer Science, and approximately three years of relevant industry experience, or an equivalent combination of education and experience (for example, a Master's Degree in Electrical Engineering or Computer Science, and two years of experience). The experience could be derived from either industry or working in a research program dedicated to computer architecture research.

**Source:** Proposed level of ordinary skill in expert reports.

### A.    VLSI Objections:

VLSI objects to Intel's removal of the level of ordinary skill as a method to attempt to remove VLSI's doctrine of equivalents assertions. This is improper.

Further, Intel does not object to the standard noting that "there is no meaningful distinction between the parties' positions regarding the level [of] ordinary skill," further undermining any objection that it should not be included.

---

[15]   Intel objects to VLSI's instruction in its entirety as unnecessary because there is no meaningful distinction between the parties' positions regarding the level ordinary skill, such that an instruction is unnecessary and likely to confuse the jury.  To the extent an instruction regarding the level of ordinary skill is deemed necessary, the parties would need to propose an instruction for each of the two asserted patents, and Intel reserves the right to do so.

**JURY INSTRUCTION NO. 42.   WILLFUL INFRINGEMENT**[16]

In this case, VLSI argues that Intel willfully infringed the asserted patents. If you have decided that Intel has infringed any claims of the VLSI Patents, you must go on and address the additional issue of whether or not the infringement was willful. Willfulness requires you to determine whether VLSI proved that it is more likely than not that the infringement by Intel was willful.

You may not determine that the infringement was willful just because you find that Intel was aware of the VLSI Patents and infringed them. Instead, you must also find that Intel deliberately infringed the VLSI Patents.

To determine whether Intel acted willfully, consider all facts and assess Intel's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

(1)   Whether or not Intel acted consistently with the standards of behavior for its industry;

(2)   Whether or not Intel intentionally copied a product of VLSI or a prior patent owner that is covered by the VLSI Patents;

(3)   Whether or not Intel reasonably believed it did not infringe or that the patent was invalid;

(4)   Whether or not Intel made a good-faith effort to avoid infringing the VLSI Patents, for example, whether Intel attempted to design around the VLSI Patents; and

(5)   Whether or not Intel tried to cover up its infringement.

[An infringer may be found liable for willful infringement even if it did not have actual knowledge of the patent or infringement if the infringer intentionally took steps to remain unaware of the patent or infringement. This is known as "willful blindness." Willful blindness is a factor to consider with respect to willfulness.]

---

[16] Intel objects to VLSI's instruction in its entirety.  Intel has moved to dismiss VLSI's willful infringement claims and also has moved for summary judgment on such claims.  Thus, Intel believes that an instruction regarding willfulness—as well as any mention of willfulness in these instructions—is inappropriate.  To the extent Intel's motions are denied, Intel proposes the instruction herein.

[An infringer may be found liable for willful infringement only if it had actual knowledge of the patent and either deliberately infringed the patent or deliberately acted despite a risk of infringement that was so obvious that it should have been known.  Either way, to find willful infringement, you would have to find that the infringer engaged in conduct that is willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.]

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 24 and 2021-03-01 Trial Tr. 189:20-25 (with modifications); *see also* Federal Circuit Bar Association Model Jury Instructions, § B.3.10 (2020) (with modifications).

## A.     VLSI Objections:

VLSI objects to Intel's proposed language as legally erroneous and misleading to the jury, including because it ignores that a party need not have "actual knowledge" for willful blindness.

**JURY INSTRUCTION NO. 43.   PATENT INVALIDITY—GENERALLY**

I will now instruct you on the rules you must follow in deciding whether or not Intel has proven that the asserted claims of the '187 and '522 Patents are invalid. A patent is presumed valid. The burden of establishing invalidity of a patent or any claim rests solely on Intel as the party asserting invalidity.

To prove that any claim of a patent is invalid, Intel must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

Even though the Patent Office examiners have allowed the asserted claims as valid, you have the responsibility for deciding whether Intel has met its burden of proving by clear and convincing evidence that the claims of the patent are invalid.

***Source***: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 25 (with modifications); 35 USC § 282; Federal Circuit Bar Association Model Jury Instructions § 4.1 (2020) (with modifications).

### A.      VLSI Objections:

VLSI objects to the removal of the presumption of validity.  Intel's removal has no basis and invites error for the jury to believe that there is no presumption in either direction. VLSI's proposed instruction is legally proper.

**JURY INSTRUCTION NO. 44.   PATENT INVALIDITY—PRIOR ART**

**VLSI Proposed Instruction**:

In order for someone to be entitled to a patent, the claimed invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Intel contends that the following is prior art to the VLSI Patents. The following are the only alleged prior art before you in this case:

- For the asserted claims of the '187 Patent:
  - U.S. Patent No. 6,980,037 ("Page")
  - U.S. Patent No. 5,949,277 ("Bujanos")
  - U.S. Patent No. 5,883,501 ("Arakawa")
  - Widlar, *New Developments in IC Voltage Regulators* ("Widlar")
  - U.S. Patent No. 5,739,708 ("LeWalter")
  - U.S. Patent No. 5,778,237 ("Yamamoto")
- For the asserted claims of the '522 Patent:
  - U.S. Patent No. 6,664,775 ("Clark")
  - U.S. Patent No. 6,484,265 ("Borkar")
  - U.S. Patent No. 5,481,178 ("Wilcox")
  - U.S. Patent No. 6,137,280 ("Ackermann")
  - U.S. Patent No. 5,764,007 ("Jones")
  - U.S. Patent No. 5,614,869 ("Bland")
  - U.S. Patent No. 6,366,157 ("Abdesselem")

*Source*: Federal Circuit Bar Association Model Jury Instructions §§ 4.3a-1, 4.3a-2 (2020) (with modifications).

**Intel Proposed Instruction**:

In order for someone to be entitled to a patent, the claimed invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

(1) Prior art includes any technical information that was known or used by others in the United States or patented or described in a printed publication anywhere in the world before the date of the alleged invention for the asserted patent. Such technical information is considered known if it was reasonably accessible to the public on that date.

(2) Prior art includes any technical information that was already patented or described in a printed publication, anywhere in the world more than a year before the filing date of the asserted patent.

(3) Prior art includes any technical information that was described in a published patent application filed before the date of the alleged invention for the asserted patent.

(4) Prior art includes any technical information that was described in a patent granted on an application filed before the date of the alleged invention for the asserted patent.

(5) Prior art includes any invention that was made by another person in the United States before the date of the alleged invention for the asserted patent and was not abandoned, suppressed, or concealed. For someone else to have made the claimed invention first, the other person must have either (1) reduced their invention to practice before the date of the alleged invention for the asserted patent, or (2) conceived of their invention before the named inventors of the asserted patent and exercised diligence in reducing it to practice starting just before the alleged conception date for the asserted patent.

*Source*: Federal Circuit Bar Association Model Jury Instructions §§ 4.3a-1, 4.3a-2 (May 2020) (with modifications).

### A.    VLSI Objections:

VLSI objects to Intel's proposed formulation of this instruction as improper, confusing, and legally inaccurate and misleading. Further, VLSI objects to Intel's alterations of the model instruction on which it purports to rely, including its failure to list its alleged prior art.

For example, Intel's proposed instruction is contrary to this Court's narrowing order and Intel's disclosures by instructing the jury broadly that any material that falls within any of the enumerated categories is "prior art." This is legally and factually untrue. Intel chose its specific alleged prior art and prior art combinations. It must be held to those choices.

Intel's objection suggesting that other prior art is allowed for general purposes makes clear that it intends to ignore the Court's narrowing order and use prior art other than the narrowed prior art. Further, Intel's instruction (and its objection) ignores that its proposed instruction of invalidity by obviousness repeatedly references "prior art" without qualifying that such art must be from a particular list Intel provided pursuant to this Court's order. *See* Instruction No. 46 (Obviousness). Intel's proposal to broadly construe "prior art" in its proposed instruction (and as is argues in its objection) is contrary to this Court's narrowing order, is highly prejudicial to VLSI, and invites jury confusion.

## JURY INSTRUCTION NO. 45.   PATENT INVALIDITY—PRIOR ART NOT CONSIDERED BY THE PTO[17]

When a party challenging the validity of a patent presents evidence that was not considered by the Patent Office examiners during the prosecution of the application and not cumulative of other evidence that was considered by the Patent Office which resulted in the issued patent, such new evidence may be given more weight and may make it easier to satisfy the party's clear-and-convincing evidence burden.

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:19-cv-254-ADA (W.D. Tex.), D.I. 563 at No. 27; Instructions in *AVM v. Intel*, No. 1:15-cv-00033-RGA, D.I. 719 (D. Del.) (with modifications); *Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91 (2011).

A.      **VLSI Objections:**

VLSI objects to this proposed instruction by Intel as duplicative, confusing, and unduly prejudicial. Intel's proposed instruction is unnecessary and will cause juror confusion in terms of the proper standard to apply. Intel's proposed instruction will cause the jurors to apply a lower, and improper, standard. VLSI disagrees that Intel's instruction properly reflects the law as to be communicated to the jury. For example, Intel's objection improperly elevates alleged prior art that is cumulative of prior art that the PTO did consider.

Should the Court determine that such an instruction is warranted, VLSI reserves the right to provide a supplemental instruction providing context.

---

[17] VLSI objects to the inclusion of this instruction in its entirety as suggesting an improper lower standard (i.e. not clear and convincing evidence) to the jury.

**JURY INSTRUCTION NO. 46.   PATENT INVALIDITY—OBVIOUSNESS**

[**VLSI Proposed Instruction**:

Defendant contents in this case that the asserted claims of the VLSI Patents are invalid as being obvious.

Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, the invention may have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Because an issued patent is presumed valid, Intel bears the burden of establishing obviousness by clear and convincing evidence.

A patent claim with several elements is not proved obvious merely by demonstrating that each of the elements was known. Most, if not all, inventions rely on the building blocks of prior art.

Now, in determining whether the patent is invalid because of obviousness, you must consider the scope and content of the prior art, the differences between the prior art and the claimed invention, and the level of ordinary skill in the art. In determining the level of ordinary skill in the art, you should consider the person of ordinary skill as one who is presumed to be aware of all the pertinent prior art. The skill of the actual inventor is irrelevant because inventors may possess something that distinguishes them from workers of ordinary skill in the art.

In considering whether a claimed invention is obvious, you should consider whether as of the priority date of the asserted patents there was a reason that would have prompted a person of ordinary skill in the field to combine the known elements in a way that the claimed invention does taking into account such facts as: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests

the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success.

Now, in determining whether the claimed invention was obvious, consider each claim separately and consider only what was known at the time of the invention. In determining whether the claimed invention was obvious, do not use hindsight. In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teaching of the VLSI Patents. In making these assessments, you must also take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention and afterwards that shed light on non-obviousness. These include:

(1)   Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

(2)   Whether the claimed invention satisfied a long-felt need;

(3)   Whether others had tried and failed to make the claimed invention;

(4)   Whether others invented the claimed invention at roughly the same time;

(5)   Whether others copied the claimed invention;

(6)   Whether the claimed invention achieved unexpected results;

(7)   Whether others in the field praised the claimed invention;

(8)   Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

(9)   Whether others actively sought or obtained rights to the patent from the patent owner; and

(10) Whether the inventor proceeded contrary to accepted wisdom in the field.

These objective indicia can show that the invention is not obvious. While these objective indicia must be taken into account, you must consider all of the evidence related to obviousness before you reach a decision.

In order to find any of the asserted claims of the patent invalid you must find that Defendants have proven obviousness by clear and convincing evidence.]

Source: *KAIST IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex.), 2018-06-15 Trial Tr. (D.I. 498) 56:7-59:16 (with modifications); Federal Circuit Bar Association Model Jury Instructions, § B.4.3a-2 (2020) (with modifications).

[**Intel Proposed Instruction**:

Intel contends that the asserted claims of the '187 and '522 patents are invalid as being obvious.

Even though a claimed invention may not have been identically disclosed or described before it was made by the named inventors on the patent, it is still not patentable if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the alleged invention.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the art, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. In determining the level of ordinary skill in the art, you should consider the person of ordinary skill as one who is presumed to be aware of all the pertinent prior art.  The skill of the actual named inventor on the asserted patent is irrelevant, because inventors may possess something that distinguishes them from persons of ordinary skill in the art. Do not use hindsight; consider only what was known at the time of the alleged invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art alone does not prove obviousness.  Most, if not all, inventions rely on building blocks of prior art.

A claimed invention may be obvious in light of either a single prior art reference or the combination of two or more prior art references.  In considering whether a claimed invention is obvious, you should consider whether, at the time of the alleged invention, there was a reason that would have prompted a person having ordinary skill in the field of the patent to combine the known elements in the prior art in a way that the claimed invention does, taking into account such factors as: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements of the claimed invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether a person of ordinary skill in the art of the patent would have had a reasonable expectation of success in combining the prior art.

In determining whether the claimed invention was obvious, you should take into account any objective evidence, sometimes called secondary considerations, that may shed light on whether or not the claimed invention is obvious, such as:

(1)   Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

(2)   Whether the claimed invention satisfied a long-felt need that others had been unable to satisfy;

(3)   Whether others had tried and failed to make the claimed invention;

(4)   Whether others came up with the claimed invention at roughly the same time;

(5)   Whether others copied the claimed invention;

(6)   Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

(7)   Whether the claimed invention achieved unexpected results;

(8)   Whether others in the field praised the claimed invention;

(9)   Whether persons having ordinary skill in the art of the claimed invention expressed surprise or disbelief regarding whether the claimed invention would work;

(10)   Whether others actively sought or obtained rights to the patent from the patent owner; and

(11)   Whether the named inventor proceeded contrary to accepted wisdom in the field.

For secondary considerations to be accorded substantial weight, VLSI must establish a nexus between the evidence and the merits of the patented invention as recited in the claims. VLSI therefore bears the burden of establishing a nexus between the patented invention and any evidence of commercial success, industry praise, or other secondary considerations. Commercial success and industry praise are only relevant to obviousness considerations if there is proof that the success or praise was a direct result of the unique characteristics of the patented invention recited in the claims. If the claimed invention is only a component of a commercially successful machine or process, the patent holder must show a nexus between the patented feature and the commercial success or industry praise. If the commercial success or industry praise is due to an unclaimed feature of the device, the commercial success is irrelevant.  Similarly, if the feature that creates the commercial success was known in the prior art, the success is not relevant to invalidity.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.]

*Source*: Federal Circuit Bar Association Model Jury Instructions § B.4.3c (May 2020) (with modifications); *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056 (Fed. Cir. 2018); *W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361 (Fed. Cir. 2010); *In re Huang*, 100 F.3d 135 (Fed. Cir. 1996).

A.      **VLSI Objections:**

VLSI objects to Intel's additions to the model instruction as unnecessary, improper, and legally incorrect or misleading, for example, in its presentation of secondary considerations. For example, Intel's proposed instruction does not present the objective indicia as objective indicia of non-obviousness which is the sole purpose and use of such indicia.

Additionally, VLSI objects to Intel's proposed instruction as the instruction provided by VLSI provides better clarity and instruction to the jury, and is modeled after an instruction actually presented to a jury, rather than being an amalgam of case law. In its objection, Intel ignores that this instruction was provided to an actual jury.

Further, Intel's addition of "[i]n determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well" is confusing as it is difficult to track how the claims interplay with one another. A simpler, but still unnecessary addition would be "each claim must be considered separately when considering whether any claim is obvious."

Intel's proposal also attempts to remove or modify "invention" in the instruction is contrary to the instruction itself. The purpose of the instruction is to describe when a patent claim might not be valid due to obviousness. It is also unclear to what "invention" Intel is objecting. Intel's instruction repeatedly uses the word "invention" in other places.

Intel's anticipated objections to VLSI's proposal are without merit.  For example, VLSI anticipates that Intel will object to the term "in a single prior art reference" (as it did in the -057 case) as somehow meaning that a single prior art reference cannot render a claim obvious. That is not what is included in the instruction. Rather, the instruction clearly states that obviousness can, and does not preclude a finding of obviousness based on a single prior-art reference.

**JURY INSTRUCTION NO. 47.   DAMAGES—INTRODUCTION**

If you find that Intel infringed any valid claim of either one of the VLSI Patents, you must then consider what amount of damages to award to VLSI. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Intel has not infringed any valid claim of either one of the asserted patents, then VLSI is not entitled to any damages.

[The damages you award, if any, must be adequate to compensate VLSI for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should not be less than what the patent holder would have received had it been paid a reasonable royalty.]

[If you award damages, the damages you award must be adequate to compensate VLSI for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put VLSI in approximately the same financial position that it would have been in had the infringement not occurred but in no event may the damages award be less than what the patent holder would have received had it been paid a reasonable royalty. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate the patent holder for any infringement.]

VLSI has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that VLSI establishes that are more likely than not. While VLSI is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

[In this case, VLSI seeks damages in the form of what it contends to be a reasonable royalty. You must be careful to ensure that award is no more and no less than the value that the patented inventions have provided to Intel.]

[In this case, VLSI seeks damages in the form of what it contends to be a reasonable royalty. A reasonable royalty is defined as the money amount the patent owner and Intel would have agreed upon as a fee for use of the claimed invention at the time just prior to when any infringement began. But, regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more and no less than the value of the patented invention.

Please also note that when I say that VLSI is seeking damages that it contends to be a reasonable royalty, that does not mean I agree that VLSI is seeking a reasonable amount. If you reach the issue of damages, it will be up to you the jury to determine what a reasonable amount would be.

I will give more detailed instructions regarding damages shortly. Note, however, that VLSI is entitled to recover no more and no less than what you determine is a reasonable royalty for any infringement that occurred in the United States.]

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 29 (VLSI's proposal is without modification); *see also* Federal Circuit Bar Association Model Jury Instructions § B.5.1, § A.4 (2020) (with modifications); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), D.I. 379, 23-24 (with modifications).

    **A.**    **VLSI Objections:**

VLSI objects to Intel's modifications to the instruction as given by this Court in the -057 case (which included much language then-presented by Intel) after the Court's consideration of the same issues.

In particular, VLSI objects to Intel's inclusion of language suggesting that VLSI is seeking lost profits ("approximately the same financial position") which is misleading and highly prejudicial as the relevant consideration is the next sentence "but in no event less than a reasonable royalty."

VLSI objects to the next line ("You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate the patent holder for any infringement") which is duplicative and confusing as suggesting a separate limitation on damages other than the already articulated standard that it be to compensate the patent holder and not as a punishment to the infringer.

VLSI also objects to Intel's additions that suggest to the jury that VLSI's damages request is improper or that the Court disagrees with the request, for example in adding that the damages are "in the form of what [VLSI] contends to be" a reasonable royalty and additional sentences to explicitly state to the jury that (after already insinuating that VLSI's royalty rate is not reasonable) the Court is not "agree[ing] that VLSI is seeking a reasonable amount." These alterations are unduly prejudicial and improperly bias the jury against VLSI.

**JURY INSTRUCTION NO. 48.   DAMAGES—REASONABLE ROYALTY**

A reasonable royalty is defined as the money amount that the patent owner and the alleged infringer would have agreed to if a hypothetical negotiation had taken place at the time just prior to when any infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent owner and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.

[Unlike in a real world negotiation, all parties to the hypothetical negotiation are presumed to believe that the patents are] / [In determining this, you must assume that both parties believed the patent was] valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products or methods have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. An appropriate combination of royalty base and royalty rate must reflect the value attributable to the infringing features, if any, of the Intel products and methods, and no more.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 30 (VLSI's proposal is without modifications); *see also Maxwell, Ltd. v. ZTE Corp.*, 5:16-cv-00179-RWS

(E.D. Tex.), D.I. 223, 28-29, 2018-06-29 Instruction 7.1 (with modifications); AIPLA Model Jury Instructions, § V.10.2.5.1 (2019) (with modifications).

### A.      VLSI Objections:

VLSI objects to Intel's attempt to modify the instruction as provided by this Court in the -057 case, and in particular to remove language stating that this a hypothetical and not a "real world" negotiation.  Intel's desire to argue what would happen in the "real world" is improper as a hypothetical negotiation has very particular requirements.  *See, e.g., Speedfit LLC v. Woodway USA, Inc.*, No. 13-CV-1276, 2019 WL 1436306 (E.D.N.Y. Mar. 29, 2019) (noting differences in hypothetical negotiation from how other negotiations are conducted).

Further, VLSI objects to Intel's attempted removal of important context for the jury of what a reasonable royalty award must compensate for—namely the incremental value of the patented invention to the infringing products.  VLSI's proposal properly instructs the jury that "[t]he reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *See, e.g., Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product."); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd*., 807 F.3d 1283, 1304 (Fed. Cir. 2015) ("A key inquiry in the analysis is what it would have been worth to the defendant, as it saw things at the time, to obtain the authority to use the patented technology, considering the benefits it would expect to receive from using the technology and the alternatives it might have pursued.").

**JURY INSTRUCTION NO. 49.   DAMAGES—APPORTIONMENT REQUIRED**

Any amount of damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused products or other factors such as marketing or advertising, or either party's size or market position. A royalty compensating the patent owner for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the products accused of infringement have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 31 (VLSI's proposal is without modifications); *see also* Federal Circuit Bar Association Model Jury Instructions § B.5.12 (2020) (with modifications).

**A.     VLSI Objections:**

VLSI objects to Intel's alteration of the instruction as provided by this Court in the -057 case. In particular, Intel adds reference to the parties' market position and size, which is language Intel modified from the model instruction, which references only the "patent holder's" size or market position. This language's purpose was to prevent an assertion that a patentee is not entitled to damages because it is small or otherwise could not make the relevant sales, facts which are irrelevant to reasonable royalty calculations. But this language does not and cannot apply equally to both parties. VLSI objects to Intel's inclusion of discussion of the parties' market position and size as misleading. Such terms as related to Intel necessarily implicate the sales base and Intel's extent of use and as such, Intel seems to be attempting to discount its actual use in determining damages.

VLSI would offer Intel a compromise by both including this instruction and removing the phrase "size or market position" entirely. However, VLSI would also agree to follow the model rule and include "or the patent holder's size or market position" in the instruction.

Additionally, VLSI objects to Intel's addition of the words "and no more" as being unnecessary and changing the instruction to seemingly imply that it could be less than.  Intel does not add "and no more ***and no less***."

**JURY INSTRUCTION NO. 50.   REASONABLE ROYALTY—RELEVANT FACTORS (AGREED)**

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

- Any royalties received for licensing of the patent-in-suit, proving or tending to prove an established royalty.

- The rates paid by Intel to license other patents comparable to the VLSI Patents.

- The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

- The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

- The effect of selling the patented products or methods in promoting other sales of the licensee (Intel); the existing value of the claimed invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

- The duration of the VLSI Patents and the term of the license.

- The established profitability of the products made under the VLSI Patents; their commercial success; and their popularity.

- The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results.

- The nature of the patented inventions; the character of any commercial embodiment of it as owned and produced by or for the licensor; and the benefits, if any, to those who have used the claimed invention.

- The extent, if any, to which Intel has made use of the claimed invention; and any evidence that shows the value of that use.

- The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

- The portion of the profit that arises from the patented inventions themselves as opposed to profit arising from

> unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

- ▪ The opinion testimony of qualified experts.

- ▪ The amount that a licensor and a licensee would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

- ▪ Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 32; *see also* AIPLA Model Jury Instructions, § V.10.2.5.3 (2019) (with modifications to remove inapplicable instructions).

**JURY INSTRUCTION NO. 51.   DAMAGES—[DOUBTS RESOLVED AGAINST INFRINGER] [RESOLUTION OF DOUBTS][18]**

Any doubts that you may have on the issue of damages due to Intel's failure to keep proper records should be decided in favor of VLSI. Any confusion or difficulties caused by Intel's records also should be held against Intel, not VLSI.

[VLSI does not believe this instruction should be mutual, however, should the Court so decide, VLSI proposes the following from *VLSI v. Intel*: If you believe that on any issue you must decide, including, but not limited to, damages that either party has failed to keep proper records, then any confusion or difficulty that you encounter in resolving the issue should be held against the party who failed to keep the records and not against the other party.]

[On any issue you must decide—including, but not limited to, damages—if you determine either party has failed to keep proper records, then any confusion or difficulty that you encounter in resolving the issue should be held against the party who failed to keep the records and not against the other party.]

*Source*: AIPLA Model Jury Instructions, § V.10.3 (2019); alternative from *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 33 (with modifications).

### A.   VLSI Objections:

VLSI objects to any mutuality of this instruction.  Intel repeatedly failed to produce materials in this litigation and then has attempted to use its failure to produce data (including financial data) against VLSI.  In the past couple weeks alone, Intel had to be ordered by the Court to produce necessary financial information.

---

[18] Intel objects to this instruction in its entirety.  It is unnecessary and will be confusing to the jury. To the extent an instruction regarding the resolution of doubts is deemed necessary, Intel proposes the instructions herein.

As an alternative, VLSI proposes the language used by this Court in the -057 case.

**JURY INSTRUCTION NO. 52.   DAMAGES—COMPARABLE AGREEMENTS**[19]

The existence of any comparable damage agreement or other transactions may inform your decision as to the proper amount and form of the reasonable royalty award.

Whether a particular patent agreement or other transaction is comparable to the hypothetical license depends many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structures and comparable scope.   An agreement may be comparable even if the patented technology and economic circumstances of the agreement are not identical to the hypothetical negotiation. While the parties to the hypothetical negotiation assume a patent is valid and infringed, an agreement may be comparable even if there has been no determination or assumption by the parties to the agreement that the patent is valid and infringed or used. The question is whether the agreement is sufficiently comparable that it provides a reasonable indication of how the parties to the hypothetical negotiation would have negotiated a license to the asserted patents. To the extent that an agreement is not comparable to the hypothetical license to the Asserted Patents, it should not be used to determine the amount or form of any reasonable royalty award.

[However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between the patent owner and the accused infringed in terms of the technologies and economic circumstances of the contracting parties when you make your reasonable royalty determination. While the parties to the hypothetical negotiation assume as patent is valid and infringed, an agreement may be comparable even if there has been no determination or assumption by the parties to the agreement

---

[19] VLSI does not believe that this instruction should be given. However, it if is given, VLSI proposes a modified instruction from *VLSI v. Intel*.

that the patent is valid and infringed. However, this is one of the differences you may consider in determining whether a license agreement is comparable to the hypothetically negotiated license. The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is or was between parties who were involved in a lawsuit.] [The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties who were involved in a lawsuit and whether any payment terms set forth in the license agreement were influenced by a desire to avoid the costs and burden of further litigation, and thus do not reflect the value that the parties attributed to the patented invention.]

*Source*: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 34 (with modifications); *see also, e.g.*, *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873-874 (Fed. Cir. 2010); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 78 (Fed. Cir. 2012).

### A.      VLSI Objections:

VLSI does not believe any instruction is appropriate.  However, should an instruction be given, VLSI proposes a slightly modified version of the instruction provided in the -057 case.

VLSI further objects to Intel's alterations to the model instruction and the instruction as given in the -057 case. Intel's proposal is unclear with regard to how to treat different licenses despite their differences, and improperly singles out litigation settlements as being relevant to cost-avoidance, while ignoring that many parties agree to license agreements outside of litigation to avoid the costs of litigation.  Further, Intel's formulation improperly assumes that licenses arising from litigation are not voluntary, and ignoring that such licenses reflect a necessary element of a hypothetical negotiation—namely the assumption (or at least recognized risk) of infringement.

Intel's proposed formulation further fails to instruct the jury that it must account for any differences between the allegedly comparable licenses and the hypothetically negotiated license, as Federal Circuit case law mandates. *See, e.g., ResQNet.com, Inc. v. Lansa, Inc*, 594 F.3d 860, 873 (Fed. Cir. 2010) (finding reversible error when district court failed to account for technological and economic differences between allegedly comparable licenses and hypothetically negotiated license). "[D]istrict courts performing reasonable royalty calculations [must] exercise vigilance when considering past licenses to technologies other than the patent in suit" and "must account for differences in the technologies and economic circumstances of the contracting parties." *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014).

**JURY INSTRUCTION NO. 53.   DAMAGES—LUMP SUM VS. RUNNING ROYALTY**[20]

Reasonable royalty awards can take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for licensing covering all the sales of the licensed product, both past and future.

When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

In determining whether a lump sum payment is appropriate, you may consider whether the parties to the hypothetical negotiation accepted lump sum payments in connection with comparable patent agreements, if any.

Reasonable royalty awards may also take the form of a running royalty based on the revenue from or the volume of sales of the licensed products. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate.

Running royalty awards may also be calculated as a lump sum over a certain period of time as VLSI has done here, or as an effective per-unit rate for each infringing unit multiplied by the total number of infringing units.

It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case, provided that it compensates the patent owner for any infringement in accordance with all of the instructions I have given you.

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 35 (with modifications).

---

[20] VLSI does not believe that any instruction is necessary or appropriate. However, it if is given, VLSI proposes a modified instruction from *VLSI v. Intel*.

### A.      VLSI Objections:

VLSI objects to the inclusion of this instruction. The jury should only be asked to assess past damages.

VLSI nevertheless provides its alternative proposal if an instruction is given, which is modified from the instruction provided in the -057 case and provides a correct assessment of the law. To the extent Intel objects that the instruction "suggests . . . damages must be awarded," (as it did in the -057 case) such an objection is without merit as VLSI's instruction is fully consistent with the governing statute, which requires that damages "shall" be awarded "in no event less than a reasonable royalty." 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty . . . .").

## JURY INSTRUCTION NO. 54.   DAMAGES—DATE OF COMMENCEMENT OF DAMAGES

If you find infringement of one or more valid patent claims, you must determine the amount of damages for the infringing activity that occurred during the damages period for this case.  For both the '187 and '522 patents, the damages period began on March 1, 2019, which is the date on which Intel was put on notice of VLSI's claims that Intel infringes the two patents.  For the '187 patent, the damages period continues through December 31, 2020 [*provided Intel updates its financial data through that date*], which is the date through which Intel has provided financial data for its activities that are accused of infringement here.  For the '522 patent, the damages period continued until November 20, 2020, which is the date on which the '522 patent expired.  This does not mean that the infringement did not occur at other times; it only means that this is the damages period at issue before you in this case.  If you find that Intel infringed multiple patents, even by a single infringing act, and if you award a reasonable royalty for the infringement, then you may award separate royalties to VLSI for each patent that was infringed.

*Source*: Federal Circuit Bar Association Model Jury Instructions § B.5.10 (2020) (with modifications); AIPLA Model Jury Instructions § V.10.2.5.6 (2019).

### A.    VLSI Objections:

VLSI objects to Intel's removal of the time frame for which damages must be determined as misleading and likely to lead to juror confusion and error.  Further, Intel's removal of the necessary time frame for *each* patent in suit is improper and contrary to law.  *See Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1362 (Fed. Cir. 2006) ("Because the determination of reasonable royalty damages is tied to the infringement being redressed, a separate infringement beginning at a different time requires a separate evaluation of reasonable royalty damages."). *See*

*also Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1561 n. 8 (Fed. Cir. 1983) ("a patent owner has every right to demand royalties for each patent he holds").

## JURY INSTRUCTION NO. 55.   COURT FINDING OF INTEL PRE-TRIAL MISCONDUCT

The Court finds that Intel engaged in misconduct during the pre-trial process.  In particular, Intel offered a deal under which VLSI would narrow its case and then, in exchange, Intel would narrow its own case.  VLSI accepted the deal and, as agreed, narrowed its case in a timely manner.  Intel, however, then refused to narrow its own case in exchange, as it had promised it would.  As a result, Intel received a benefit from the deal but then did not provide in return the benefit it had promised VLSI.  The Court finds that Intel's failure to abide by the terms of the deal was improper and prejudicial to VLSI and, among other things, made it more difficult and more expensive for VLSI to prepare its case for trial.  You are entitled to take Intel's misconduct into account in rendering your decision in this case.

### A.      VLSI Objections:

Intel's objections to this instruction are without merit.  Intel proposed a narrowing agreement to VLSI with VLSI accepted.  VLSI provided its narrowing (including dropping a significant number of claims—by dropping indirect infringement of *all* claims of both the '187 and '522 Patents).  Intel refused to then similarly narrow the case by dropping prior art, instead requiring that VLSI drop direct infringement of particular claims for it to drop *any* alleged prior art combinations.  This was improper and highly prejudicial to VLSI.  VLSI continues to reserve all rights related to such misconduct.

**JURY INSTRUCTION NO. 56.   DUTY TO DELIBERATE (AGREED)**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

***Source***: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 37;

Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 3.7.

**JURY INSTRUCTION NO. 57.   SOCIAL MEDIA INSTRUCTION (AGREED)**

During your deliberations, you may not communicate any information about this case to anyone by any means. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell phone, smartphone, PDA, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Snapchat, Instagram or Twitter, or any other way to communicate. You may not communicate to anyone any information about this case or conduct any research about this case until this case is over, and I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.

***Source****: VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at No. 38; *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex.), D.I. 379, 32 (with modifications).

## STIPULATION

[The stipulation of the parties should not be read in open court.]

The parties have agreed to the following stipulation ██████████████████

████████████████████████████████████████████████████:

- ████████████████████████████████████
  █████ ██████████ ██████ ██████ ████ █ ██
  ██████████████████████████████████████
  ██████████████████████████████████████
  ████ █ █ ████ █████ █ ████ ████████ ██ █
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ████████████

**Source**: *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), D.I. 563 at Stipulation

(modification only to reflect the percentage as relevant to this case).

Dated: April 5, 2021

By:      */s/ Andy Tindel*

Morgan Chu (*pro hac vice*)
Benjamin W. Hattenbach  (*pro hac vice*)
Iian D. Jablon  (*pro hac vice*)
Alan J. Heinrich  (*pro hac vice*)
Ian Robert Washburn  (*pro hac vice*)
Amy E. Proctor  (*pro hac vice*)
Dominik Slusarczyk  (*pro hac vice*)
Elizabeth C. Tuan  (*pro hac vice*)
Charlotte J. Wen  (*pro hac vice*)
Brian Weissenberg  (*pro hac vice*)
Benjamin Monnin  (*pro hac vice*)
Jordan Nafekh  (*pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California  90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
ijablon@irell.com
aheinrich@irell.com
iwashburn@irell.com
aproctor@irell.com
dslusarczyk@irell.com
etuan@irell.com
cwen@irell.com
bweissenberg@irell.com
bmonnin@irell.com
jnafekh@irell.com

Babak Redjaian  (*pro hac vice*)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California   92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
mstrub@irell.com
bredjaian@irell.com

J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No. 24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, TX 75652
Telephone: (903) 657-8540
Facsimile:  (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile:  (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
ccherry@haleyolson.com
**HALEY & OLSON, P.C.**
100 N. Ritchie Road, Suite 200
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile:  (254) 776-6823

*Attorneys for VLSI Technology LLC*

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing instrument was served or delivered electronically via email, to all counsel of record, on April 5, 2021.


_____/s/  *Benjamin Monnin*_____
Benjamin Monnin